IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM AMOR, ) | |
| ) | |
|     *Plaintiff*, ) | Case No. 20-cv-01444 |
| ) | |
| v. ) | Hon. John Z. Lee |
| ) | |
| JOHN REID & ASSOCIATES, et al., ) | Mag. J. Jeffrey I. Cummings |
| ) | |
|     *Defendants*. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT
JOHN REID & ASSOCIATES, INC. MOTION TO DISMISS**

Plaintiff, William Amor, by and through his attorneys, Loevy & Loevy, respectfully submits the following response to the Motion to Dismiss filed by Defendant John Reid & Associates, Inc. ("Reid"), Dkt. No. 29, and states as follows:

**INTRODUCTION**

Plaintiff brought this civil rights lawsuit against Defendants Reid, Michael Masokas and Arthur T. Newey (through his estate, as he is deceased) – former polygraph technicians at Reid– for entering into and executing a conspiracy which caused Plaintiff to falsely confess to a murder and arson he did not commit, and to be arrested and prosecuted for those crimes. Dkt. No. 1, Plaintiff's Complaint. Defendant Masokas filed a motion to dismiss in response, arguing – among other things – that Plaintiff's Complaint lacked the factual allegations necessary to show Defendants were acting under color of law when they were interrogating Plaintiff. Dkt. No. 16, Defendant Masokas' Motion to Dismiss. Plaintiff responded by providing a detailed accounting of the many factual allegations within his Complaint which support his constitutional claims. Dkt. No. 28, Plaintiff's Response to Defendant Masokas' Motion to Dismiss. That motion remains pending.

1

Defendant Reid subsequently filed the instant motion to dismiss, Dkt. No. 29, which incorporates by reference the "under color of law" argument in Defendant Masokas' motion to dismiss, Dkt. No. 16-17. Defendant Reid's motion to dismiss also seeks to dismiss Plaintiff's constitutional and state law claims against Defendant for lack of subject matter jurisdiction. *See* Dkt. No. 29. Specifically, Defendant Reid's instant motion moves to dismiss the Complain, arguing: that (1) the Court lacks subject-matter jurisdiction over Plaintiff's section 1983 claims, because Plaintiff has pled no *Monell* claim against Defendant Reid, (2) Plaintiff has not pled necessary factual allegations sufficient to show Defendant Reid was acting under color of state law when its employees were interrogating Plaintiff, and (3) the Court should decline to exercise supplemental jurisdiction over the Illinois state law claims. *See id*.

As with Defendant Masokas's motion to dismiss, Defendant Reid's claims are unavailing. Plaintiff's Complaint alleges a detailed and specific set of facts, which outlines both the contractual agreement Defendant Reid had with the City of Naperville to provide unconstitutional services, as well as the actual and constructive notice Defendant Reid had that its employees were likely to violate the constitutional rights of people such as Plaintiff. Such allegations more than plead a *prima facie* case of *Monell* liability, and as such, Defendant Reid's motion to dismiss should be denied.[1]

## FACTUAL BACKGROUND

Plaintiff provided a detailed summary of his factual allegations in responding to the other pending motion to dismiss, and focuses below on the facts most relevant to the present motion and Reid. As the Court knows, in September 1995, Plaintiff William Amor became a suspect for a crime he did not commit. Dkt. No. 1 at ¶ 15. Plaintiff's mother-in-law tragically died in an

---

[1] In the interest of efficiency, Plaintiff will likewise adopt his Response to Defendant Masokas' Motion to Dismiss with respect to Defendant Reid's "under color of law" argument. Dkt. No. 28.

apartment fire on September 5, 1995, while Amor and his wife were out of the apartment at the movies. *Id.* at ¶¶ 13-14. Shortly thereafter, employees of NPD began treating Plaintiff as a suspect for her murder and arson, and questioned him several times about his involvement. *Id.* at ¶¶ 15-18.

On September 15, 1995, Plaintiff was arrested for an unrelated traffic offense, and held at DeKalb County Jail until October 3, 1995. *Id.* at ¶¶ 17, 20. Immediately upon his release, Plaintiff was confronted by NPD Officers Cross and Guerrieri, who took Plaintiff from the jail, placed him into a locked police car, and drove him to Defendant John Reid & Associates office in Chicago to take a polygraph test regarding the apartment fire. *Id.* at ¶ 20. John Reid & Associates is a for-profit Illinois corporation which provided, among other services, training advice and consultation to the Naperville Police Department, pursuant to an agreement with the City of Naperville. *Id.* at ¶ 6.

This was not the first time Defendant Reid and its employees interacted with NPD Officers. Prior to Plaintiff's polygraph examination, Reid entered into an agreement with the City of Naperville to provide its officers with training, advice, and consultation in connection with the interrogation of individuals suspected of criminal activity. *Id.* at ¶ 6. Many of the interrogations occurred at Reid's Chicago office, as Plaintiff's did. *Id.* The City of Naperville also regularly delegated to Reid & Associates and its employees the task of interrogating, polygraph testing, and eliciting statements persons suspected of criminal activity. *Id.*

Plaintiff spent several hours at Reid & Associates on September 15 being polygraph tested by Defendants Masokas and Newey, and then several more hours being interrogated by them. *Id.* at ¶¶ 21-22. Both the polygraph testing and the continued interrogation of Plaintiff was completed with the authorization and at the behest of Officers Cross and Guerrieri, and pursuant

3

to Reid & Associate's contract with Naperville. *Id.* at ¶¶ 6, 21. It followed not only weeks of captivity by Plaintiff in jail, but also hours without food or sleep for Plaintiff. *Id.* at ¶ 27. Throughout the questioning by the Individual Defendants, Plaintiff maintained his innocence. *Id.* at ¶ 24. Nonetheless, Defendants Masokas and Newey continued to interrogate Plaintiff, in an attempt to coerce him into falsely confessing. *Id.* at ¶ 35. Plaintiff was eventually transported to the NPD for further interrogation. *Id.* at ¶ 23. While at the NPD he suffered further emotional and physical abuse, which included an NPD Officer slamming him up against a wall. *Id.* at ¶ 27. This continued abuse, when combined with Defendants coercion and interrogation, caused Plaintiff to falsely confess to starting the fire. *Id.* Based on this confession, Plaintiff was charged with first degree murder and aggravated arson, and spent nearly twenty years in prison. *Id.* at ¶¶ 41-46.

     Defendants Masokas and Newey did not just polygraph and interrogate Mr. Amor as their only contribution in the effort to produce his coerced confession. They took other steps as part of their conspiracy with NPD Officers to ensure his wrongful conviction. Specifically, Defendant Masokas along with Mr. Newey knew that Mr. Amor's ultimate inculpatory statement made at NPD was fabricated, and the result of physical and mental coercion in which they themselves had participated. Id. at ¶ 35. They also knew that any confession he gave was not the result of being confronted with the results of a failed polygraph test and choosing to come clean as a result. *Id.* To assist in Mr. Amor's prosecution, these Defendants nevertheless memorialized a false account of their portion of Plaintiff's interrogation which was used to support the charges against Mr. Amor and to deny him bond pending trial, and that was ultimately used to ensure his conviction. *Id.* at ¶ 36.

4

In 2015, Plaintiff was granted leave to file a Petition for Post-Conviction Relief. *Id.* at ¶ 42. Two years later his conviction was vacated by the Circuit Court of DuPage, which explained that "the lynchpin of the State's case at trial was the defendant's confession, which the State and Defense experts today agree is scientifically impossible." *Id*. at ¶ 44. Finally, on February 21, 2018, Amor was acquitted after a bench trial. *Id.* at ¶ 45. Unfortunately, as a result of Defendants' conduct, Mr. Amor nevertheless suffered immense damages, including twenty years of wrongful incarceration, mental anguish, emotional distress, humiliation, loss of liberty, loss of freedom of movement, loss of enjoyment of life, loss of consortium, and other non-pecuniary interests. *Id.* at ¶ 47.

Plaintiff's Complaint brings federal and state law claims against Reid including several section 1983 constitutional claims for Fifth and Fourteenth Amendment due process violations, coerced confessions, unlawful detention, failure to intervene, and conspiracy as well as malicious prosecution, intentional infliction of emotional distress, and state law conspiracy. *Id.* at 10-17.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Plaintiffs need to pass only "two easy-to-clear hurdles" to survive Defendants' motion to dismiss: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the

complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

The Federal Rules of Civil Procedure ("Rule(s)") permit notice pleading and only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a)(2) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich*, 664 F.3d at 212.

## ARGUMENT

**I.     Plaintiff Has Sufficiently and Plausibly Pled His Section 1983 Claims**

    **A.     Plaintiff Has Adequately Pled *Monell* Liability[2]**

"Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting for their policies and practices." *Rice ex. rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). *See also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (holding that *Monell* framework applies to private corporations acting under color of state law).  As with municipal defendants, a plaintiff "must show that his

---

[2] Should this Court find that Plaintiff has not adequately pled *Monell*, Plaintiff seeks leave to amend his Complaint under Rule 15(c)(1)(B), which allows supplemental pleadings to a Complaint when said pleading arises out of the same conduct, transaction, or occurrence set out in the original complaint. Fed. R. Civ. P. 15(c)(1)(B); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013).

injury was the result of the . . . corporation's official policy or custom." *Rice*, 675 F.3d at 675. An official policy or custom may be established either by means of: (1) an express policy, (2) a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or (3) through the actions of an individual who possesses the authority to make final policy decisions on behalf of the corporation. *Id*. A plaintiff must also establish a causal link between the corporation's policy (or lack of policy) and the plaintiff's injury. *Id*.

Defendant Reid alleges that Plaintiff has not pled a *Monell* type claim against it, and thus cannot maintain a section 1983 action against Defendant Reid for violating Plaintiff's constitutional rights. Dkt. No. 29, 1. In support of his claim, Defendant does not offer much, if any, material support; instead he simply states that Plaintiff has not pled anything that resembles a *Monell* type claim, without specifying how Plaintiff's Complaint lacks such allegations. Dkt. No. 30, 3-4. Defendant's assertion is untrue, and fails to consider the allegations in Plaintiff's Complaint which support several theories of *Monell* liability.

For example, Plaintiff alleges that Defendant Reid participated in Plaintiff's interrogation pursuant to an agreement it had with the City of Naperville to provide its officers with training, advice, and consolation in connection with the interrogation of individuals suspected of criminal activity. Dkt. No. 1 at ¶ 6. In other words, Plaintiff alleges that Defendant Reid had an express policy or widespread practice in place, through which it provided polygraphing and interrogation services to the NPD. This, in and of itself, is enough to implicate *Monell* liability. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir.2005) (a policy is "a course of action consciously chosen from among various alternatives.") (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Rodriguez*, 577 F.3d at 827 ("one of the principal ways, indeed the principal way, by which a private entity would undertake [responsibility for a

traditional public function] is by entering into a contractual relationship . . . . In such a circumstance, the provider has assumed freely the same liability as the state.");

Plaintiff has also alleged facts to establish that Reid was aware of the constitutional risk created by the widespread practice of its employees to fabricate evidence and coerce false confessions from criminal suspects, and failed to take appropriates steps to quell the practices or protect Plaintiff. *See Thomas v. Cook County Sheriff's Dept*. 604 F.3d 293, 303 (7th Cir. 2009) (upholding finding of *Monell* liability against Sheriff after plaintiff presented evidence that several employees failed to timely review the medical requests of prisoners in their care, over an extended period of time). This can be seen in Plaintiff's allegations that the City of Naperville regularly delegated to Defendant Reid and its employees the responsibilities of interrogating and eliciting statements from persons suspected of criminal activity, Dkt. No. 1 at ¶ 6; that Plaintiff was interrogated and polygraph tested by the individual Defendants at the Chicago offices of Defendant Reid, *id*. at ¶ 20-21; and that the individual Defendants falsified their account of Plaintiff's interrogation, which was later used to support charges against Plaintiff, *id*. at ¶ 36.

Taken together this shows that Defendant Reid had constructive notice that the individual Defendants were engaging in behavior that deprived Plaintiff of his constitutional rights – namely, that Defendant Reid knew or should have known its employees were conducting interrogations of criminal suspects for the NPD, that it was occurring on its premises, that it was being memorialized by the individual Defendants while they were acting as agents of the company, and that it was a non-discrete occurrence. This demonstrates a series of bad acts from which the Court can infer that Defendant Reid "was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned . . . the misconduct of its [subordinates]." *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir.2004). Such a

claim easily establishes a cause of action under *Monell*. *See id*; *see also King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (where municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction").

In sum, Plaintiff has alleged facts sufficient to state a claim under several theories of *Monell* liability, and has thus established a viable section 1983 claim against Defendant Reid. As such, Defendant Reid's assertion the Court does not have subject-matter jurisdiction against Defendant Reid is misplaced, and this motion to dismiss on this claim should be denied.

      **B.**    **Plaintiff Has Adequately Pled Defendants' Acted Under Color of State Law**

As with Defendant Masokas, Defendant Reid argues that Plaintiff's section 1983 claims fail to adequately allege that Reid & Associates acted under color of law. Dkt. No. 29. Specifically, Defendant Reid argues that Plaintiff's well-pled Complaint lacks the necessary factual allegations sufficient to state a claim that Defendant Reid acted in concert with the NPD, or that Defendant Reid performed acts fairly attributable to a government entity. *See id*. citing Dkt. No. 16-17. In opposition to this claim, Plaintiff adopts his Response to Defendant Masokas' Motion to Dismiss, Dkt. No. 28, and posits that – accepting all factual allegations as true and drawing all inferences in Plaintiff's favor – Plaintiff's Complaint adequately alleges both the existence of a conspiracy between Defendants and the NPD, and the delegation of a public function from the NPD to Defendants, such that Plaintiff can make out a claim under section 1983. Accordingly, Defendant Reid's motion to dismiss should be denied.

**II.**    **Supplemental Jurisdiction Applies to Plaintiff's State Law Claims**

Section 1367(a) grants district courts supplemental jurisdiction to hear all state claims that are "so related to [the plaintiff's] federal law claims . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). If section 1367(a) requirements are satisfied, the district

9

court must next consider whether there is some other reason to decline to exercise jurisdiction over state-law claims, such as: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exception circumstances . . . other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Defendant Reid argues that this Court does not have subject-matter jurisdiction over Reid because Plaintiff has not pled *Monell* liability, and because there are no other federal law claims alleged against Reid. Dkt. No. 30 at 4. This is not the case. Even supposing this Court finds that Plaintiff has not adequately alleged *Monell* liability, it would still retain subject-matter jurisdiction over Defendant Reid under Section 1367(a). Here, Plaintiff's state law claims arise from the same set from the same set of underlying facts as his federal law claims, which satisfies the relational requirements for supplemental jurisdiction under section 1367(a).

Relatedly, Defendant Reid also asks the Court to decline over Plaintiff's state law claim. *Id.* at 4-5. This request is predicated on the assumption that this Court will dismiss Plaintiff's federal claims, *id*., and also that this Court will not find Plaintiff has adequately pled *Monell* liability for Defendant Reid. For the reasons mentioned in the foregoing sections, the Court should not dismiss Plaintiff's federal claims. Unless and until the Court dismisses Plaintiff's federal law claims, section 1367(c) is likewise inapplicable. Therefore, the Court should continue to exercise supplemental jurisdiction over Plaintiff's state law claims, and similarly decline to dismiss Plaintiff's state law claims.

## CONCLUSION

For the reasons articulated above and incorporated by reference from Plaintiff's prior pleadings, *see* Dkt. No. 28, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

    Respectfully submitted,

    **WILLIAM AMOR**

    */s/ Mariah Garcia*
    One of Plaintiff's Attorneys

    Jon Loevy
    Tara Thompson
    Mariah Garcia
    LOEVY & LOEVY
    311 N. Aberdeen St., 3rd Fl.
    Chicago, IL 60607
    (312) 243-5900

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2020, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Mariah Garcia*
One of Plaintiff's Attorneys
