IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM AMOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 1444 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| JOHN REID & ASSOCIATES, | ) | |
| MICHAEL MASOKAS, THE ESTATE | ) | |
| OF ARTHUR T. NEWEY, and | ) | |
| UNKNOWN EMPLOYEES OF JOHN | ) | |
| REID & ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

William Amor has sued John Reid & Associates ("JR&A"), an interview and interrogation consulting firm that contracts with the Naperville Police Department ("NPD"), as well as JR&A's employees, Michael Masokas and the Estate of Arthur Newey (collectively, "Defendants"), alleging violations of 42 U.S.C. § 1983 and Illinois law. Amor's claims stem from his treatment in 1995, when he was arrested, charged, and falsely convicted of arson and murder. After his mother-in-law tragically died in a fire at Amor's home, the NPD detained Amor and brought him to Defendants for polygraph testing and interrogation. Amor contends that Defendants' interrogation tactics violated his constitutional rights and resulted in his false confession—which in turn led to his wrongful conviction and the over twenty years he spent in prison for a crime he did not commit.

Amor has moved this Court to appoint and substitute a special representative for Newey, who is deceased; Masokas opposes this motion.[1] For their part, Masokas and JR&A have each moved to dismiss Amor's complaint in its entirety. For the following reasons, Amor's motion is granted, Masokas's motion to dismiss is denied, and JR&A's motion to dismiss is granted.

## I.     Background[2]

On September 10, 1995, Amor and his wife were out when Amor's mother-in-law called 911 to report a fire in the apartment that the three of them shared in Naperville. Compl. ¶¶ 11–14, ECF No. 1. Although the Naperville Fire Department arrived and began rescue efforts, Amor's mother-in-law died as a result of smoke inhalation. *Id.* ¶ 13. Amor learned of his mother-in-law's death when he and his wife arrived home at 11:00 p.m. that night. *Id.* ¶ 14.

At that point, NPD employees began questioning Amor as a suspect in the supposed arson. *Id.* ¶ 15. Amor repeatedly denied setting the fire. *Id.* ¶ 16. Five days later, Amor was arrested on outstanding warrants for unrelated traffic offenses, and he was questioned once again about the fire. *Id.* ¶¶ 17–18. He was detained on the unrelated warrants for eighteen days, and when he was released on October 3, 1995, employees of the NPD confronted Amor outside the jail and transported him in a locked police car to the offices of JR&A. *Id.* ¶ 20.

---

[1]     JR&A takes no position on Plaintiff's motion.

[2]     The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

2

At JR&A, Masokas and Newey administered multiple rounds of polygraph testing to Amor over the course of several hours. *Id.* ¶ 21. After the polygraph testing, Defendants continued to question Amor with the cooperation and involvement of the NPD until 11:30 p.m. *Id.* ¶¶ 22–23. Throughout Defendants' questioning, Amor maintained his innocence. *Id.* ¶ 24.

At 11:30 p.m., Amor was transported to the NPD for further interrogation. *Id.* ¶ 23. Ultimately, in the early morning hours of October 4, 1995, NPD employees took recorded statements allegedly made by Amor suggesting that he had intentionally started the fire by knocking a lit cigarette onto a newspaper that he had doused with vodka. *Id.* ¶¶ 25–26. On the basis of this purported confession, Amor was detained pending trial, charged, and later convicted of first-degree murder and aggravated arson. *Id.* ¶¶ 38–41. The confession and other inculpatory statements were attributed to Amor by Masokas, Newey and employees of the NPD. *Id.* ¶ 40.

In 2017, after Amor had been incarcerated for over twenty years, the Circuit Court of DuPage County vacated Amor's convictions, finding that the way in which Amor had "confessed" to setting the fire was "scientifically impossible." *Id.* ¶ 44. On February 21, 2018, Amor was acquitted after a retrial. *Id.* ¶ 46.

This action followed. In it, Amor alleges that Masokas and Newey each "threaten[ed] and abus[ed] [him] in an attempt to extract inculpatory statements from him." *Id.* ¶ 34. Amor states that they also "falsely told [him] that he flunked a polygraph examination," *id.* ¶ 1, even though they each "knew that [he] had not

3

failed a polygraph exam administered by them, and that any confession he gave was not the result of being confronted with the results of a failed polygraph and choosing to come clean as a result," *id.* ¶ 35.

Moreover, Amor contends that Masokas and Newey both "knew that any inculpatory statement by [him] was fabricated, and that [he] only gave the statements as a result of the physical and mental coercion to which they participated in subjecting him." *Id.* ¶ 35. Masokas and Newey also allegedly "memorialized a false account of their interrogation of [Amor], which was used to support the charges against [him] and deny him a trial." *Id.* ¶ 36. Masokas and Newey did this, Amor claims, because they had decided to conspire with members of the NPD to "falsely implicate [him] by any means necessary," despite the "lack of any credible information suggesting that [Amor] was involved in setting the fire." *Id.* ¶¶ 30–31.

Based upon these factual allegations, Amor has filed a nine-count complaint asserting a claim under 42 U.S.C. § 1983 for violations of his constitutional rights, as well as several state law claims brought pursuant to this Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367(a).

## II. Amor's Motion to Appoint and Substitute a Special Representative

Because Newey died several years ago, Amor has moved to appoint and substitute a special representative for his estate. Amor's motion is governed by Rule 17, which states that, for parties who are not live individuals or corporations, the party's "[c]apacity to sue or be sued is determined . . . by the law of the state

4

where the court is located"—here, Illinois. Fed. R. Civ. P. 17(b)(3); *see also Deleon-Reyes v. Guevara*, No. 18-CV-01028, 2019 WL 1200348, at *1–2 (N.D. Ill. Mar. 14, 2019) (citing *Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 548–49 (7th Cir. 2014)). Illinois state law, in turn, provides that "[i]f a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives,"[3] and if the action "is not otherwise barred," the court may "appoint a special representative for the deceased party for the purposes of defending the action" if no estate has already been opened. 735 Ill. Comp. Stat. 5/13-209(b)(2).[4] The parties do not dispute that Amor has followed the correct procedure, nor do they dispute that there is no open probate estate for Newey. *See* Def. Masokas's Mem. Opp'n. Pl.'s Mot. Appoint & Substitute Special Representative ("Masokas's Opp'n.") at 2, ECF No. 26.

Instead, Masokas opposes the appointment of a special representative for Newey because he claims that the suit is "otherwise barred" by the statute of limitations. A two-year statute of limitations governs Amor's claims. *See* 735 Ill. Comp. Stat. 5/13-202 (providing a two-year statute of limitations period for malicious prosecution and personal injury torts); *Ray v. Maher*, 662 F.3d 770, 773

---

[3] The parties do not dispute that Amor's causes of action survived Newey's death, nor could they. *See Anderson v. Romero*, 42 F.3d 1121, 1123–24 (7th Cir. 1994) (explaining that § 1983 suits survive a party's death).

[4] Amor also admits that his recovery will be "limited to the proceeds of any liability insurance protecting the estate." *See* Pl.'s Mot. Appoint & Substitute Special Representative at 3, ECF No. 13 (quoting 735 Ill. Comp. Stat. 5/13-209(b)(2)). The Court will not address the availability of such insurance at this juncture.

(7th Cir. 2011) (noting that § 1983 borrows the forum state's statute of limitations, which in Illinois is two years). The limitations period began running on February 21, 2018, when Amor was finally acquitted after his retrial. *See McDonough v. Smith*, 139 S. Ct. 2149, 2155–57 (2019) (holding that the statute of limitations on a § 1983 claim based on an unconstitutional conviction or sentence does not begin to run until "the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor"); *Brown v. City of Chi.*, No. 18 C 7064, 2019 WL 4694685, at *5 (N.D. Ill. Sept. 26, 2019) (following *McDonough* when evaluating coercive interrogation, fabrication of evidence, and derivative claims).[5] Thus, the statute of limitations on Amor's claims against Newey appears to have expired on February 21, 2020.

Amor counters that the statute of limitations was tolled through February 28, 2020. This is because on February 18, 2020—three days before the statute of limitations ran out—Amor filed a motion for leave to amend an existing complaint pending before this Court to add the defendants he names in this case. *See* Pl.'s Mot. Leave File 1st Am. Compl., *Amor v. Cross*, No. 18 C 2523 (N.D. Ill.) (Lee, J.), ECF No. 67. The complaint in that case pleads similar claims, but names Naperville and NPD officers as defendants. *See* Compl., *Amor*, No. 18 C 2523, ECF No. 1. The Court denied Amor's motion for leave to amend on February 25, 2020.

---

[5] The accrual date is the same for Amor's state law claims. *See* 735 Ill. Comp. Stat. 5/13-202 ("If the compelling of a confession . . . results in whole or in part in a criminal prosecution of the plaintiff, the 2-year period set out in this Section shall be tolled during the time in which the plaintiff is incarcerated, or until criminal prosecution has been finally adjudicated in favor of the above referred plaintiff, whichever is later.")

6

*See* 2/25/20 Min. Entry, *Amor*, No. 18 C 2523, ECF No. 73. Thus, Amor argues, the statute of limitations was tolled for seven days while the Court decided the motion, and he had three days after February 25, 2020, in which to file a new complaint naming JR&A, Masokas, and Newey.

Amor is correct. "[T]he submission of a motion for leave to amend, properly accompanied by the proposed amended complaint . . . tolls the statute of limitations." *Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993); *see also id.* at 1129 n.2 (noting that applying state tolling rules would not change the result); *Hurst v. Bd. of Fire & Police Comm'n*, 952 N.E.2d 1246, 1250 (Ill. App. 4th Dist. 2011) (noting that the "statute of limitations would be tolled where, as here, before the expiration of the limitations period, plaintiff . . . filed his motion to amend accompanied by a copy of the proposed amended complaint"). Thus, Amor's complaint was timely filed.

Masokas further argues that a special representative needed to be appointed *before the statute of limitations ran out* in order for the Newey to be a proper party. Masokas cites only one case, *Relf v. Shatayeva*, 998 N.E.2d 18 (Ill. 2013), for this assertion. Masokas's Opp'n at 3. But that opinion deals primarily with a different subsection of the statute. *See Relf*, 998 N.E.2d at 25–26 (discussing § 13-209(c)). In fact, *Relf*'s entire discussion of § 13-209(b) merely parrots the statute itself, noting

> Subsection (b) sets forth the basic procedures and time
> requirements that must be followed in situations where
> a person against whom an action may be filed dies before
> the limitations period runs out, the action survives the

7

> person's death, and it is not otherwise barred. If no petition has been filed for letters of office for the decedent's estate, the court may appoint a "special representative" for the deceased party for the purposes of defending the action. 735 ILCS 5/13–209(b)(2) (West 2010). Otherwise, *i.e.,* if a petition *has* been filed for letters of office for the decedent's estate, an action may be commenced against the "personal representative" appointed by the court. 735 ILCS 5/13–209(b)(1) (West 2010).

*Id.* Thus, *Relf* does not support Masokas's position, and the Court cannot identify any other cases supporting Masokas's argument.

Amor filed his motion to appoint a special representative on June 30, 2020, approximately four months after filing his complaint. *See* Pl.'s Mot. Appoint & Substitute Special Representative, ECF No. 13. Given this timing and the surrounding circumstances,[6] the Court finds that Amor's motion was timely and not barred by the statute of limitations.

Because JR&A has not opposed the motion and Masokas raises no other objections, the Court grants Amor's motion to appoint and substitute a special representative for Newey.

---

[6] The Court notes that the COVID-19 pandemic began raging and Chicago issued a shelter-in-place order just weeks after Amor's complaint was initially filed. *See* Order of the Commissioner of Health of the City of Chicago (Mar. 18, 2021), https://www.chicago.gov/content/dam/city/depts/cdph/HealthProtectionandResponse/Order%20re%20Shelter%20in%20Place%20FINAL.pdf. And filing deadlines in the Northern District of Illinois were extended several times in light of the pandemic. *See* Amended General Order 20-0012, ECF No. 7 (extending deadlines by 21 days as of March 16, 2020); Second Amended General Order 20-0012, ECF No. 8 (extending deadlines by an additional 28 days as of March 30, 2020); Third Amended General Order 20-0012, ECF No. 10 (extending deadlines by an additional 28 days as of April 24, 2020).

### III. JR&A and Masokas's Motions to Dismiss

JR&A and Masokas each move to dismiss Amor's complaint in its entirety. Masokas argues that the complaint fails to state a claim under Rule 12(b)(6) because it does not sufficiently allege that Masokas (and Newey) acted under color of law. JR&A joins Masokas's "color of law" argument, and further argues (ostensibly under Rule 12(b)(1)) that the Court lacks subject-matter jurisdiction over JR&A because the complaint fails to state a *Monell* claim, which is required to hold a corporate entity liable under § 1983. *See Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 675 (7th Cir. 2012) ("Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978))).[7] Both Defendants also argue that, upon dismissing Amor's § 1983 claims, the Court should decline to exercise supplemental jurisdiction over his state law claims.

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

---

[7] However JR&A might want to frame its argument, it is more appropriately considered under Rule 12(b)(6), rather than Rule 12(b)(1). *See Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 786 (N.D. Ill. 2013), *on reconsideration in part* (Aug. 16, 2013) (noting that the defendants' *Monell* argument did not "plausibly aim[] at the court's subject matter jurisdiction" and, instead, treating the motion as arising under Rule 12(b)(6)).

P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

**B.  Analysis**

The Court will first address JR&A's argument that the complaint fails to allege a *Monell* claim, then turn to Masokas's argument that the complaint does not adequately plead state action.

    **1.  JR&A's Motion to Dismiss Pursuant to *Monell***

Under the Supreme Court's decision in *Monell*, an entity "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Rice,* 675 F.3d at 675 (applying *Monell* to a private corporation). To successfully state a *Monell* claim, a plaintiff must allege "the existence of an

10

'official policy' or other . . . custom" by pointing to "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chi.*, 690 F.3d 829, 833–34 (7th Cir. 2012). "In applying *Monell* . . . , one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, --- F.3d ----, No. 19-3210, 2021 WL 405006, at *4 (7th Cir. Feb. 5, 2021).

JR&A argues that it cannot be held liable under § 1983 because Amor's complaint does not identify any express policy, widespread practice, or action by a person with final policymaking authority that led to the alleged violations of Amor's constitutional rights. In response, Amor relies heavily on his allegation that JR&A acted pursuant to an agreement with the City of Naperville. *See* Compl. ¶ 6. This allegation, Amor argues, demonstrates that JR&A "had an express policy or widespread practice in place, through which it provided polygraphing and interrogation services to the NPD," which "is enough to implicate *Monell* liability." Pl.'s Resp. Opp'n Def. JR&A's Mot. Dismiss at 7, ECF No. 34. But a policy of providing polygraphing and interrogation services is not itself unconstitutional. Thus, pleading the existence of such a policy is insufficient to establish *Monell* liability without further allegations that demonstrate that this policy resulted in widespread constitutional violations. *See Grieveson v. Anderson*,

11

538 F.3d 763, 774 (7th Cir. 2008) (noting that "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," but that a plaintiff's evidence must "permit an inference that the [defendant] has chosen an impermissible way of operating," because "what is needed is evidence that there is a true . . . policy at issue, not a random event").

The Court is mindful that "there is no clear consensus as to how frequently [bad] conduct must occur to impose *Monell* liability, 'except that it must be more than one instance,' . . . or even three." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir.1988); then citing *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002)). But, here, Amor has only alleged one instance of unconstitutional treatment resulting from the ostensible policy or practice: the treatment he received on October 3, 1995. Thus, he has not stated a *Monell* claim against JR&A.

Because Amor cannot state a federal claim against JR&A, the Court declines to exercise supplemental jurisdiction over Amor's state law claims against JR&A. *See* 28 U.S.C. § 1367(c)(3); *see also Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001) (stating that a district court's decision to relinquish supplemental jurisdiction where all federal claims have been dismissed is "the norm, not the exception" (cleaned up)). Nonetheless, the Court will allow Amor an additional opportunity to replead his claims against JR&A. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020) ("Ordinarily, . . . a court should allow at least one opportunity to amend the

complaint."). Accordingly, Amor's claims against JR&A are dismissed without prejudice.

### 2. Masoka's Motion to Dismiss for Failure to Allege State Action

Masokas moves to dismiss Amor's claims against him and Newey[8] for failure to adequately allege that they—as private employees of a private entity—acted under color of law.

"Section 1983 requires a plaintiff to show '(1) an action taken under color of law (2) which violates his federal constitutional rights.'" *Logan v. Laterzo*, 24 F. App'x 579, 582 (7th Cir. 2001) (quoting *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991)). Although the "under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, . . . . a private citizen can act under color of law if there is 'evidence of a *concerted effort* between a state actor and that individual.'" *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)).

This is known as the "conspiracy theory" of § 1983 liability. *Id.* And "[t]o establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and

---

[8] JR&A's motion to dismiss incorporated Masokas's arguments on the "color of law" issue, *see* Mem. Supp. Def. JR&A's Mot. Dismiss at 4, ECF No. 30, but because the Court dismisses JR&A on other grounds, the Court need not discuss Masokas's "color of law" argument as they pertain to JR&A.

13

(2) overt acts in furtherance [of the agreement] actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Masokas argues that Amor's allegations of a conspiracy are "conclusory and unsupported by any specific factual allegations." Def. Masokas's Mot. Dismiss at 5, ECF No. 17. He protests that "[e]ven if [Defendants'] conduct was parallel to the police officers' allegedly extreme interrogation, it does not support a conspiracy." *Id.* at 6. Masokas is right that conclusory allegations of joint action or a conspiracy are not sufficient to survive a motion to dismiss. *Fries*, 146 F.3d at 458. Nonetheless, even after disregarding the complaint's conclusory allegations, *see, e.g.*, Compl. ¶ 31,[9] the Court finds that Amor has adequately pleaded a conspiracy theory of state action under § 1983.[10]

According to the complaint, Defendants participated in Amor's interrogation pursuant to an agreement between JR&A and the City of Naperville, under which the City "regularly delegated to [JR&A] and its employees the responsibilities of interrogating, testing, and eliciting statements from persons suspected of criminal activity." *Id.* ¶ 6. Amor was taken to JR&A's office for polygraph testing by NPD officers in a locked police car. *Id.* ¶ 20. Once there, Masokas and Newey

---

[9] Paragraph 31 of the complaint asserts that "[t]he Individual Defendants entered into a conspiracy amongst themselves and with members of the Naperville Police Department, including but not limited to Cross, Guerrieri, and Cunningham to falsely implicate Plaintiff by any means necessary." Compl. ¶ 31.

[10] Because the Court decides that Amor has adequately alleged state action under the conspiracy theory of liability, the Court does not address Amor's alternate argument that he has alleged state action under a "public function" theory of liability. *See* Pl.'s Resp. Opp'n Def. Masokas's Mot. Dismiss at 13, ECF No. 28 (citing *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004)).

14

administered several rounds of polygraph testing. *Id.* ¶ 21. Moreover, the complaint alleges that Masokas and Newey lied to Amor and told him that he failed a polygraph test. *Id.* ¶ 1.

Furthermore, after the testing, Masokas and Newey questioned Amor at JR&A's offices until 11:30 p.m. on October 3, 1995—using mentally and emotionally abusive tactics—with the *cooperation and involvement* of the NPD. *Id.* ¶¶ 22–23, 27. Thus, the complaint specifically alleges a "concerted effort" between the NPD and Defendants during the allegedly abusive interrogation of Amor while he was held at JR&A. *See Spiegel*, 916 F.3d at 616 (emphasis omitted). Then, after Amor later falsely confessed (while detained at the Naperville Police Department), *id.* ¶¶ 23–27, the confession and other inculpatory statements were attributed to Amor by Masokas and Newey, in addition to employees of the NPD, *id.* ¶ 40. What is more, Masokas and Newey "subsequently memorialized a false account of their interrogation of Plaintiff, which was used to support the charges against Plaintiff and deny him bond pending trial." *Id.* ¶ 36.

Amor thus sufficiently "raise[s] the inference of mutual understanding" between Masokas, Newey, and the NPD, because these acts "are unlikely to have been undertaken without an agreement." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). As such, the complaint sufficiently alleges an "express or implied agreement among defendants to deprive [him of his] constitutional rights," *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988), and therefore states a claim that Defendants acted under color of law for the purposes of § 1983.

15

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to appoint and substitute a special representative is granted. The parties should file a joint status report regarding suggested special representatives by March 22, 2021. Additionally, JR&A's motion to dismiss is granted, while Masokas's motion to dismiss is denied. Amor's claims against JR&A are dismissed without prejudice. If Plaintiff wishes to file an amended complaint, it is due by April 1, 2021.

ENTERED: 3/4/21

_____

John Z. Lee

United States District Court Judge