**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM AMOR, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 20-cv-01444 |
| | ) | |
| v. | ) | Judge: Honorable Jorge L. Alonso |
| JOHN REID & ASSOCIATES, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**

Dated: February 9, 2024

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ F. Michael Pasqualino*
    One of the attorneys for Defendants

Jonathan W. Goken, ARDC No. 6278837
F. Michael Pasqualino, ARDC No. 6311292
Alexandra W. Sternberg ARDC No. 6310249
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
(312) 345-1718/Fax: (312) 345-1778
Jonathan.Goken@lewisbrisbois.com
F.Pasqualino@lewisbrisbois.com
Alexandra.Sternberg@lewisbrisbois.com

# TABLE OF CONTENTS

**PAGE**

**INTRODUCTION**………………………………………………………………… 1

**SUMMARY OF FACTS**………………………………………………….. 3

**SUMMARY JUDGMENT STANDARD**………………………………………… 3

**ARGUMENT**………………………………………………………………… 4

I.  ALL §1983 CLAIMS MUST FAIL BECAUSE DEFENDANTS
    WERE AT ALL TIMES PRIVATE CITIZENS NOT ACTING
    UNDER THE COLOR OF STATE LAW……………………………….. 4

    A.  There Is No Evidence of A "Meeting of the Minds" or
        Understanding Between Naperville Police Department
        and Defendants Masokas and Newey to Deprive Amor
        of his Constitutional Rights…………………………………………… 4

    B.  Masokas and Newey were Not Performing a Delegated Public Function... 6

II. NO POLICY OR PRACTICE OF REID & ASSOCIATES
    CAUSED A VIOLATION OF PLAINTIFF'S
    CONSTITUTIONAL RIGHTS…………………………………………….. 8

III. PLAINTIFF CANNOT SHOW THAT DEFENDANTS
     FABRICATED EVIDENCE…………………………………………….. 10

     A.  There is No Evidence that Defendants Fabricated
         Plaintiff's Failed Polygraph Examination or his
         False Ignition Scenario…………………………………………….. 10

     B.  Plaintiff is Judicially Estopped from Arguing Defendants knew
         the Ignition Scenario Presented in Plaintiff's Voluntary
         Statements on September 15, 1995 and October 4, 1995
         was False………………………………………………………… 11

IV.  DEFENDANTS ARE ENTITLED TO SUMMARY
     JUDGMENT ON PLAINTIFF'S COERCED CONFESSION
     CLAIM (COUNT II)………………………………………………….. 14

     A.  Count II is Barred by Collateral Estoppel Because the
         Voluntariness of Plaintiff's Confession was Previously
         Adjudicated Against Him………………………………………….. 14

     B.  The Illinois Certificate of Innocence Statute Does Not
         Preclude Collateral Estoppel………………………………………… 16

# TABLE OF CONTENTS
## -Continued-

C.  Allegedly Misrepresenting the Strength of Evidence to Plaintiff
does Not Constitute Coercion…………………………………… 18

D.  Plaintiff Cannot Establish a Substantive Due Process Violation…… 20

V.  PLAINTIFF'S UNLAWFUL DETENTION (COUNT III),
CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
(COUNT IV) AND FAILURE TO INTERVENE (COUNT V)
CLAIMS ARE DERIVATIVE AND, THEREFORE, FAIL…………… 20

VI.  AS THERE IS NO EVIDENCE OF MISCONDUCT, PLAINTIFF'S
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
CLAIM MUST FAIL…………………………………………………. 20

VII.  AS THERE IS NO EVIDENCE OF MISCONDUCT,
PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIM MUST FAIL…………………………………….. 21

VIII.  PLAINTIFF'S CONSPIRACY AND *RESPONDEAT SUPERIOR*
CLAIM ARE DERIVATIVE OF HIS INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS CLAIM AND
ALSO MUST FAIL……………………………………………….. 21

CONCLUSION………………………………………………………………. 22

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                          **<u>Pages</u>**

*Steen v. Myers*, 486 F.3d 1017 (7th Cir. 2007)……………………………………...   3

*Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012)………...………………………   3

*Coleman v. Peoria*, 925 F.3d 336 (7th Cir. 2019)…………………………………….   3, 10, 20

*Am. Mfgrs. Mut. Ins. Co. v. Sullivan*, 26 U.S. 40, (1999)…………...……………….   4

*Spiegel v. McClintic*, 916 F.3d 611 (7th Cir. 2019) …………………………………...   4

*Fries v. Helsper*, 146 F.3d 452 (7th Cir. 1998)…………………...………………….   4, 5

*Wilson v. Warren County*, 830 F.3d 464 (7th Cir. 2016)…………………………….   4, 5

*Cooney v. Casady*, 735 F.3d 514 (7th Cir. 2013)………………...………………….   5, 6

*Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999)…………………………………….   5

*Green v. Benden*, 281 F.3d 661 (7th Cir. 2002)……………………………….…….   5

*Payton v. Rush-Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623 (7th Cir. 1999)……..   6, 7

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982)……………………………………….   6, 7

*Jackson v. Metropolitan Edion Co.*, 419 U.S. 345 (1974)…………………………….   6

*Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996)………………………………………….   6, 7

*Terry v. Adam*, 345 U.S. 461 (1953)……………………………………………….   6

*Marsh v. Alabama*, 326 U.S. 501,505-09 (1946)…………………………………….   7

*Blum v. Yaretsky*, 457 U.S. 991 (1982)……………………………………………..   7

*Proffitt v. Ridgway*, 279 F.3d 503(7th Cir. 2002)………………………………….   7

*Scott v. Nw. Univ. Sch. Of Law*, 98 C 6614, 1999 U.S. Dist. LEXIS 2815 (N.D. Ill. 1999)   7

*Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018)…………………………….   8

*Iskander v. Forest Park*, 690 F.2d 126 (7th Cir. 1982)……………………………….   8

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658 (7th Cir. 2016)……………..   8

*Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010)…………………………………….   8

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009)…………….   8

*Woodward v. Correctional Med. Servs. of Ill., Inc.,* 368 F.3d 917 (7th Cir. 2004)…….   8

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)……………………………………….   9

*Hildredth v. Butler*, 960 F.3d 420 (7th Cir. 2020) …………………………………...   9

*United States v. Jacques*, 744 F.3d 804 (1st Dist. 2014)…………………………….   9

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)…………………………….   10

*Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785 (7th Cir. 2013)……..   11, 12

*Wells v. Coker*, 707 F.3d 756 (7th Cir. 2013) ………………………………………   11

*New Hampshire v. Maine*, 532 U.S. 742 (2001)……………………………………..   11, 13

*People v. Ortiz*, 235 Ill.3d 319, 919 N.E.2d 941(2009)…………………………….   12

*People v. Washington*, 171 Ill. 2d 475, 665 N.E.2d 1330 (1996)…………………….   12

*Saecker v. Thorie*, 234 F.3d 1010 (7th Cir. 2000)…………………………………....   12

*People v. Amor*, 2020 IL App (2d) 190475, 180 N.E.2d 170 (2d Dist. 2020)…………   13, 15

*Scarano v. Central R. Co.*, 203 F.2d 510 (3d Cir. 1953)…………………………….   13

*Allen v. McCurry*, 449 U.S. 90 (1980)……………………………………………….   14

*Talarico v. Dunlap*, 177 Ill.2d 185, 685 N.E.2d 325 (1997)………………………….   14

*DuPage Forklift Serv. v. Material Handling Servs.*, 195 Ill. 2d 71,
      744 N.E. 2d 845 (2001). ……………………………………………………..   15

*Patrick* v. *City of Chicago*, 974 F.3d  824 (7th Cir. 2020)……………………………   16

*Nowak v. St. Rita High Sch.,* 197 Ill. 2d 381, 757 N.E.2d 471, (2001)…………………   16

## TABLE OF AUTHORITIES
### -Continued-

*People v. Bruemmer*, 2021 Ill. App (4th) 190877, 192 N.E.3d 823……………………  17

*Fields v. Chicago*, No. 10-cv-1168 Dkt. 551 (N.D. Ill. Mar. 10, 2015) ………………  17

*Wrice v. Burge*, 187 F. Supp. 3d 939 (N.D. Ill. 2015)…………………………………  18

*Johnson v. Pollard*, 559 F.3d 746 (7th Cir. 2009)…………………………………….  18,19

*Holland v. McGinnis*, 963 F.2d 1044 (1992)…………………………………………….  19

*Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986), cert. denied, 479 U.S. 989 (1986)..  19

*Chavez v. Martinez*, 538 U.S. 760 (2003)…………………………………………………  19

*Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010)……………………………………………….  19

*Rochin v. California*, 342 U.S. 165 (1952)………………………………………………  19

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) …………………………………………  20

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005)………………………………………..  20

*Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75 (2003)…………………………  20

*Borsellino v. Goodman Sachs Group, Inc.,* 477 F.3d 502 (7th Cir. 2007)………………  21

*McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 720 N.E.2d 242 (1999)..  21

*Turner v. Hirschbach Motor Lines*, 854 F.3d 926 (7th Cir. 2017)………………………  21

*Adcock v. Brakegate*, 164 Ill. 2d 54, 645 N.E.2d 888 (1994)……………………………  21

*Mauvais-Jarvis v. Wong*, 2013 IL App. (1st) 120070, 987 N.E.3d 864…………………  21

*Carey v. K-Way, Inc*., 312 Ill. App. 3d 666, 728 N.E.2d 743 (1st Dist. 2000)…………..  22


**Statute**                                                         **Pages**

FED R. CIV. P. 56(a)………………………………………………………………………  3

735 ILCS 5/2-702……………………………………………………………………………  15, 16

705 ILCS 505/8(c)……………………………………………………………………………  16

225 ILCS 2/160 ……………………………………………………………………………….  17

725 ILCS 5/110-6.3(c)(1)(A)………………………………………………………………….  18

820 ILCS 405/1900(B)…………………………………………………………………………  18

136131912.1

Defendants JOHN REID & ASSOCIATES, INC. (hereinafter referred to as "Reid & Associates"), MICHAEL MASOKAS, THE ESTATE OF ARTHUR T. NEWEY and UNKNOWN EMPLOYEES OF JOHN REID & ASSOCIATES, by and through their attorneys LEWIS BRISBOIS BISGAARD & SMITH LLP, pursuant to FED. R. CIV. P. 56 and Local Rule 56.1 submit to this Honorable Court their Memorandum of Law in Support of their Motion for Summary Judgment and state:

## <u>INTRODUCTION</u>

On September 10, 1995, a fire occurred at 218 E. Bailey in Naperville, Illinois, where Plaintiff, his wife Tina Micelli, and Tina's disabled mother Marianne Micelli resided. (SOF ¶ 17). The fire killed the only occupant at the time of the fire, Marianne Micelli. An investigation by the Naperville Fire Department and the Naperville Police Department ensued. (SOF ¶¶ 18-19). On September 12, 1995, Plaintiff was given a polygraph by examiner Richard O'Brien, who is not affiliated with Reid & Associates. The findings were inconclusive because of intoxication. (SOF ¶ 21). Plaintiff agreed to retake the polygraph with examiner O'Brien but then cancelled a scheduled retest because again he was drinking. (SOF ¶ 22).

On September 15, 1995, while being interviewed by police, Plaintiff offered a few possible explanations for the fire including that he spilled vodka on newspapers in the vicinity of where the fire investigators believed the fire started, and that he may have left a cigarette and/or candle burning when he and Tina left for the movies. (SOF ¶ 23).

On October 3, 1995, the Naperville Police Department made an appointment for Plaintiff at Defendant Reid & Associates for a polygraph. (SOF ¶ 27). Plaintiff voluntarily agreed to this polygraph examination, signing a consent form and Miranda Waiver. (SOF ¶ 35). Although Plaintiff denied involvement with the fire the entire time he was at Reid & Associates, Defendant

1

Masokas and Mr. Newey, both Reid & Associates employees, found elements of deception during the polygraph. (SOF ¶¶ 39, 45). After leaving Reid & Associates, on the next morning, on October 4, 1995, while in custody of the Naperville Police Department, Plaintiff made an admission to intentionally starting the fire to collect insurance proceeds, by intentionally flicking a cigarette onto a vodka-soaked newspaper thinking it would start a fire. (SOF ¶ 50). Plaintiff was charged and then convicted in September of 1997 of aggravated arson and first-degree murder. (SOF ¶ 52).

In 2015, Plaintiff filed a successive post-conviction petition based on "new evidence": the fact that modern fire science proved his confession could not have started the fire. (SOF ¶ 56). His conviction was vacated, and on February 21, 2018 he was retried and acquitted. (SOF ¶ 57). He then petitioned for a certificate of innocence, which was denied (and affirmed) because the court found that Plaintiff voluntarily confessed and that the voluntary confession brought about his conviction. (SOF ¶ 58).

On February 27, 2020, Plaintiff brought this suit against Reid & Associates and its polygraph employees, claiming they conspired with the Naperville Police Department to fabricate his failed polygraph, violating Plaintiff's due process rights. (Dkt. 1) He filed his First Amended Complaint on April 1, 2021. (Dkt. 45).

Plaintiff William Amor died on January 31, 2023. The claim for malicious prosecution abated upon Amor's death, resulting in the dismissal of Cout VI and to those parts of Counts VII through IX incorporating the malicious prosecution allegations. (Dkt. 124). The claims surviving Amor's death are Counts I-V and VII through IX (but only as they relate to intentional infliction of emotional distress). *Id*. Defendants seek summary judgment on all of Plaintiff's claims.

For the reasons stated herein, this Court should grant Defendants' Motion for Summary Judgment on all counts.

## SUMMARY OF FACTS

Defendants incorporate their Rule 56.1(a)2) Statement of Uncontested Facts as though set forth fully herein.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56 (a). "[S]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (internal quotations omitted). It is warranted when the non-movant cannot establish an essential element that it will bear the burden of proof for at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). While the court must construe the facts in a light most favorable to the non-movant and draw reasonable inferences in his favor, inferences based on speculation or conjecture are insufficient to defeat summary judgment. *Coleman v. Peoria*, 925 F.3d 336, 345 (7th Cir. 2019).

**ARGUMENT**

I.    **ALL §1983 CLAIMS MUST FAIL BECAUSE DEFENDANTS WERE AT ALL TIMES PRIVATE CITIZENS NOT ACTING UNDER THE COLOR OF STATE LAW.**

    A. **There Is No Evidence of A "Meeting of the Minds" or Understanding Between Naperville Police Department and Defendants Masokas and Newey to Deprive Amor of his Constitutional Rights.**

Counts I through V of Plaintiff's First Amended Complaint are filed pursuant to §1983 and allege that Defendants deprived Plaintiff of his constitutional rights. "To state a claim under §1983, the plaintiff must establish that the alleged deprivation was committed under color of state law," *Am. Mfgrs. Mut. Ins. Co. v. Sullivan*, 26 U.S. 40, 49-59 (1999). Section 1983 does not permit suits based on private conduct, "no matter how discriminatory or wrongful." *Id*. at 50, 119 S.Ct. 977. A private citizen can be considered to act under "color of state law" if there is evidence of a conspiracy, a concerted effort between a state actor and that individual. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were "willful participant(s) in joint activity with the State or its agents." *Spiegel v. McClintic, 916 F.3d 611, 616* (7th Cir. 2019) quoting *Fries v. Helsper*, 146 F.3d 152, 457 (7th Cir. 1998).  In cases involving private individuals, the Seventh Circuit has held that a conspiracy theory of § 1983 liability may lie where there is "evidence of a concerted effort between a state actor and that individual." *Spiegel*, 916 F.3d at 616. quoting *Fries*, 146 F.3d at 457; see also *Wilson v. Warren County*, 830 F.3d 64, 468 (7th Cir. 2016) ("For a private actor to act under color of state law he must have 'had a meeting of the minds' and thus reached an understanding with a state actor to deny plaintiff a constitutional right."). "To establish

4

§ 1983 liability through conspiracy theory, a plaintiff must demonstrate that (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Fries*, 146 F.3d at 457. They must share the unconstitutional goal in order to be acting under the color of state law. *Wilson*, 830 F.3d at 468.

When a plaintiff claims that defendants conspired to violate this civil rights, he must proffer specific facts tending to show that a conspiracy existed to survive a summary judgment motion; conclusory allegations will not suffice. *Cooney v. Casady*, 746 F. Supp. 2d 973, 975 (N.D. Ill. 2010) citing *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999). While a conspiracy may be inferred through circumstantial evidence, the circumstantial evidence must be "sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Cooney*, 746 F. Supp. 2d at 975 quoting *Green v. Benden*, 281 F.3d 661, 665-66 (7th Cir. 2002).

Here, there is no evidence, direct or circumstantial, that suggests that the Naperville Police Department and Defendants Michael Masokas, Arthur Newey, or any other employees of Reid & Associates shared an unconstitutional goal or had any "meeting of the minds." Nor is there any evidence that Reid & Associates' employees were "willful participants in joint activity" with Naperville Police Department and its detectives. Reid & Associates was a service-based polygraph company, hired in this by Reid & Associates to perform a polygraph on William Amor. (SOF ¶ 15). Mr. Masokas spoke to Naperville Detectives regarding their investigation so that he could develop polygraph questions, but the detectives were not present during any of the polygraph procedures or post-polygraph questioning by Masokas or Newey. (SOF ¶¶ 34-49). There is no evidence of contract or agreement between Naperville Police and Reid & Associates. (SOF ¶ 15).

5

Naperville Police was not a regular customer of Reid & Associates. (SOF ¶ 15). Once Naperville Police detectives and Plaintiff left Reid & Associates, their interactions with Reid & Associates were complete. (SOF ¶ 49). The entire time Plaintiff was present at Reid & Associates, he maintained his denial of participation in the subject fire. (SOF ¶ 49). He did not make any confession to Reid & Associates. (SOF ¶ 49).

Mr. Masokas and Mr. Newey did not participate in, nor were they aware of, the activities that occurred at Naperville Police Department after Plaintiff left Reid & Associates, including his admission to intentionally setting the fire. (SOF ¶ 49). Although Detective Cross received training from the Reid School, he also received interrogation training from the police academy, and used the interrogation techniques he personally found most effective for him. (SOF ¶ 20). He was not following any specific direction from Masokas or Newey when interrogating Plaintiff.

**B. Masokas and Newey were Not Performing a Delegated Public Function.**

Although not pleaded in a separate count of Plaintiff's First Amended Complaint, a private party can also be held responsible as a state actor where the state delegates a public function to a private entity. *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.,* 84 F.3d 623 (7th Cir. 1999). However, the Supreme Court has made clear that the relevant question is not simply whether a private group is serving a "public function" but whether the function performed has been "traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) quoting *Jackson v. Metropolitan Edion Co.*, 419 U.S. 345, 351 (1974). Such public functions are so closely associated with government that a state cannot limit its accountability for their performance, even if they are carried out by private parties. *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). The Supreme Court has found a few functions to fit within this category of state action. *See, e.g. Terry v. Adam*, 345 U.S. 461, 468-70 (1953) (election of public officials) and

*Marsh v. Alabama*, 326 U.S. 501,505-09 (1946) (operation of a company town). The Court has also ruled on a few functions that do not fit this category of state action. *Blum v. Yaretsky*, 457 U.S. 991, 1011-12 (1982) (operation of nursing home) and *Rendell-Baker*, 457 U.S. at 842 (education of children).

Assisting a public officer in a brief, ad hoc way does not transform the private actor into a state actor. *Proffitt v. Ridgway*, 279 F.3d 503, 508 (7th Cir. 2002) (noting that exposing private citizens to liability under federal law would discourage people from helping the police). In *Proffitt*, the Court stated, "to assist the police is a duty of citizenship; and the performance of a duty to someone does not turn the performer into that someone." When specifically considering whether police functions have been delegated to a private entity, courts look to whether there exists a statute or ordinance designating private actors equal powers as the police. *See Payton* 184 F.3d at 628 (comparing *Scott v. Northwestern University Schol of Law,* 1999 U. S. Dist. LEXIS 2815, 19 WL 134059 at ¶3-4 (state statute granting university police "the powers of municipal peace officers … including the power to make arrests for violations of state statutes, municipal or county ordinances" with geographic limitations placed defendants' actions within ambit of color of state law) with *Wade*, 83 F.3d at 905 (private security guard working under contract with the Chicago Housing Authority allowed to carry a handgun, arrest people for criminal trespass pending the arrival of police and use deadly force, was not considered a state actor.)

Here, there was no statute or ordinance designating police functions to Masokas and Newey. Further, in this instance, Naperville Police Department hired Reid & Associates and its employees for purposes of performing a single polygraph and, if failed, a post-polygraph interview. There is no statute or ordinance which designates them equal powers to the police, nor did Naperville Police Department delegate such powers. Although interrogation may be one aspect

of police powers, interrogation is also a function of employers and other private entities, who frequently hire Reid & Associates for this purpose. The questioning of Plaintiff by Masokas and Newey did not turn them into state actors subject to liability under § 1983.

## II. NO POLICY OR PRACTICE OF REID & ASSOCIATES CAUSED A VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.

"Liability under § 1983 is direct rather than vicarious." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). "[J]ust as a municipal corporation is not vicariously liable under a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (internal citations omitted). As such, there is no vicarious liability on Reid & Associates for the alleged acts of Mr. Masokas, Mr. Newey, or other unidentified employees. Instead, Plaintiff alleges a *Monell* theory of liability against Reid & Associates. "The *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law." *Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 664 (7th Cir. 2016). Generally, to maintain a viable § 1983 action against a private corporation, "a plaintiff must demonstrate that a constitutional deprivation occurred as the result of an express policy or custom promulgated by that entity or an individual with policy making authority." *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010); see also *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 822 (7th Cir. 2009); *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

This case concerns a single incident (on October 3, 1995) involving Plaintiff alone, which is neither "widespread" in terms of persons affected nor a "practice" in terms of the number of incidents. The Supreme Court has held that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case

to establish both the requisite fault on the part of the entity and the casual connection between the policy and the constitutional deprivation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, (1985). See *Hildredth v. Butler*, 960 F.3d 420 (7th Cir. 2020) (three incidents do not make a widespread practice for *Monell* liability).

Plaintiff alleged that Reid & Associates had a widespread practice of unreasonably long and uninterrupted interrogations, actual and threatened physical and psychological violence, lack of protection of the constitutional right to have an attorney present or remain silent, forcing individuals to sign false statements, lack of training, lack of supervision, and the fabrication of false reports. (Dkt 45 at ¶ 59). There is no evidence of *any* of these supposed practices occurring in the present case. Mr. Amor testified that he was not physically threatened or touched, he signed off that he was free to leave at any time, and he also signed a Miranda Waiver. (SOF ¶¶ 33, 35). He did not sign any false statements at Reid & Associates. (SOF ¶45).

The supposed policies and practices at issue here are referred to as the "Reid Technique." However, Joseph Buckley, the president of Reid & Associates, testified extensively regarding the nine steps and core principles included in the actual Reid Technique. These core principles include treating the subject with decency and respect, following the guidelines established by the courts, never engaging in promises of leniency, never engaging in physical harm, the threat of physical harm or the threat of inevitable consequences, using extra caution with juveniles and people with mental impairments, and honoring the subject's legal rights and physical needs. (SOF ¶14).

Further, courts have held that specific Reid Techniques, such as minimizing the gravity of the suspected criminal offense, are permissible interrogation tactics. *See United States v. Jacques*, 744 F.3d 804, 812 (1st Cir. 2014) (finding promise of lighter sentencing, statements exaggerating the quality of evidence, minimizing the gravity of offenses, and emphasizing the negative media

attention "all fall safely within the realm of permissible 'chicanery' sanctioned by this and other courts").

### III. PLAINTIFF CANNOT SHOW THAT DEFENDANTS FABRICATED EVIDENCE.

Plaintiff's §1983 claims are based on the allegations that Defendants participated in the fabrication of evidence connecting Plaintiff to the crime, including fabricated statements and his confession. All of these claims are without merit. A fabrication claim requires proof that a defendant created evidence he knew to be false. *Coleman,* 925 F.3d at 345. The plaintiff also must demonstrate that the fabricated evidence was material and was later used to deprive the defendant of their liberty in some way. *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

### A. There is No Evidence that Defendants Fabricated Plaintiff's Failed Polygraph Examination or his False Ignition Scenario.

Plaintiff alleges that Defendants Masokas and Newey conspired with the Naperville Police Department to lie to Amor that he failed his polygraph examination and to use the supposed failure to fabricate or cause Plaintiff's confession about the fire. However, there is no evidence that Plaintiff was lied to regarding his polygraph results. In fact, the physiological readings taken during his examination were read and scored separately by Mr. Masokas and Mr. Newey and subsequently by Joseph Buckley, the president of Reid & Associates, and by Defendants' expert, Dr. Frank Horvath. All four individuals found that the results indicated deception. (SOF ¶¶39-42).

Further, the idea that the fire may have started because Amor spilled vodka on the newspaper and a cigarette may have fallen on the newspaper did not originate with Reid & Associates. That idea was put forth by Amor himself in a written statement made on September 15, 1995, long before Amor was brought to Reid & Associates' office on October 3, 1995. (SOF ¶23). During Amor's visit to Reid & Associates' office, Amor consistently denied that he played

any role in starting the fire. (SOF ¶45). Amor's confession that he intentionally set the fire was made the next morning on October 4, 1995, and it was made only to the Naperville officers, not to Reid & Associates employees. (SOF ¶¶50-51). Further, no one at Reid & Associates had any contact with Naperville Fire Department Lieutenant Ferreri who was in charge of researching and determining the cause and origin of the fire. (SOF ¶ 19).

## B. Plaintiff is Judicially Estopped from Arguing Defendants knew the Ignition Scenario Presented in Plaintiff's Voluntary Statements on September 15, 1995 and October 4, 1995 was False.

If the allegedly fabricated statement, the vodka and cigarette ignition scenario, was even discussed at Reid & Associates on October 3, 1995, Plaintiff is judicially estopped from arguing that Masokas and Newey knew the ignition theory was false, as Plaintiff succeeded in showing in his post-conviction proceeding that "new evidence" determined that ignition in this fashion is scientifically impossible.

Judicial estoppel is an equitable doctrine that aims to "protect the integrity of the courts from the appearance and reality of manipulative litigation conduct." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013). The doctrine prevents a party from prevailing on an argument in one matter and then relying on a contradictory argument in a later matter. *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts typically examine three factors to assess the doctrine's applicability: (1) whether the party's positions in the two proceedings are clearly inconsistent, (2) whether the party successfully persuaded a court to accept its earlier position, and (3) whether the party would gain an unfair advantage if not estopped. *Wells*, 707 F.3d at 870; *Grochocinski*, 719 F.3d at 795.

First, Plaintiff's position in this case is diametrically opposed to the position he advocated in his post-conviction proceeding where the vacation of his conviction was a necessary predicate

to this suit. Plaintiff sought and was granted leave to file a successive post-conviction petition based on a freestanding due process claim alleging actual innocence which required him to demonstrate that the evidence offered of his innocence was "newly discovered." See e.g. *People v. Ortiz*, 235 Ill.3d 319, 333, 919 N.E.3d 941, 949-950 (2009); *People v. Washington*, 171 Ill. 2d 475, 489, 665 NE.3d 1330, 1337 (1996). To satisfy that burden, Plaintiff presented newly discovered evidence that the details of his confession had to be false. Plaintiff presented evidence that vodka is not an ignitable liquid, that a cigarette is not a competent ignition source for ignitable liquids, and evidence that called into question the fire's point of origin that was originally used to corroborate Plaintiff's statement. Plaintiff argued that his evidence was new, and "today, investigators would not believe the confession because they now know that a fire cannot ignite in that manner." (SOF ¶ 55).

This matter is similar to that of *Saecker v. Thorie*, 234 F.3d 1010 (7th Cir. 2000). Saecker sued his criminal defense attorney for malpractice, contending he was erroneously advised to forego DNA testing because the results would be inadmissible. *Id*. at 1013. After his conviction, his new counsel successfully obtained DNA testing and exonerated him, arguing that the exculpatory DNA was not available to him at his original trial. *Id*. In the malpractice case, the court found that the DNA evidence was such a novelty at the time of the original trial that the original attorney could not be faulted for foregoing testing; accordingly the malpractice case was defeated.

Second, Plaintiff did successfully persuade the court to accept this "newly discovered" evidence so as to debunk the vodka-cigarette ignition theory. In vacating Plaintiff's conviction, the court ruled, "there can be no question that the lynchpin of the State's case at trial was [Amor's] confession, which the State and Defense experts today agree is scientifically impossible. Whatever

the reason for [Amor's] scientifically impossible confession, the *new evidence* places the evidence presented at trial in a different light and undercuts this Court's confidence in the factual correctness of the guilty verdict." *People v. Amor*, 2020 IL App (2d) 190475 at ¶ 7, 180 N.E3d 170, 173 (2d 2020) (emphasis added). When Plaintiff was retried and found not guilty on all charges, in its extensive order the trial court ruled, "clearly [Amor's] vodka soaked newspaper/cigarette story believed by the investigating officers and fire experts who testified in 1997, cannot serve as a basis for finding of guilt with the advances in modern fire science knowledge." *Amor*, 2020 IL App (2d) 190475 at ¶ 7, 180 N.E.3d at 174. This again confirms that the appellate court which vacated Amor's conviction and the trial court which re-tried him were persuaded by Amor's argument of "new evidence" that modern fire science, not available to the parties in 1995, exonerated him.

The third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. at 751 citing *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel forbids the use of "intentional self-contradiction … as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Now, Plaintiff seeks to benefit by alleging that Defendants knew his admissions were false in 1995, in direct contradiction to his argument and the rulings made in his post-conviction proceedings that the falseness of the confession could not have been known in 1995.

Plaintiff's claims that Defendants conspired with Naperville Police Department to fabricate evidence must fail as there is no evidence that they knew Plaintiff's vodka and cigarette ignition scenario was false. Further, Plaintiff is judicially estopped from arguing that Defendants knew this ignition scenario was false, as he argued and it was found that the scientific impossibility of this scenario was "new evidence" in 2015 not available to the Defendants twenty years earlier.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S COERCED CONFESSION CLAIM (COUNT II).

### A. Count II is Barred by Collateral Estoppel Because the Voluntariness of Plaintiff's Confession was Previously Adjudicated Against Him.

Count II alleges Defendants, in conspiracy, compelled Plaintiff to make an an involuntary statement in violation of his Fifth Amendment rights. Following his 2018 acquittal, Plaintiff filed a petition for a certificate of innocence. To prevail, Plaintiff had to prove by a preponderance of the evidence that he did not by his own conduct voluntarily cause or bring about his conviction. 735 ILCS 5/2-702(g). The DuPage County State's Attorney's Office moved to dismiss and Plaintiff responded. A hearing was held and after argument, the court denied the certificate of innocence on the basis that Plaintiff, by his own conduct, voluntarily caused or brought about his conviction by giving a voluntary statement. This decision was affirmed on appeal.

Federal courts must give state court judgments the same preclusive effect in §1983 actions as would a court in the state in which the judgment was rendered. *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). Thus, Illinois law determines whether the state court judgment should be given preclusive effect. Under Illinois law, collateral estoppel, or issue preclusion, is an equitable doctrine that prevents a party from relitigating an issue decided in a prior proceeding. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191, 685 N.E.2d 325, 328 (1997). Illinois imposes three threshold requirements for application of collateral estoppel: 1) the issue previously decided is identical with the one presented in the pending suit; 2) final judgment on the merits; and 3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Talarico*, 177 Ill. 2d at 191. Additionally, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first

suit. *Id.* Collateral estoppel applies to both questions of law and findings of fact. *DuPage Forklift Serv. v. Material Handling Servs.*, 195 Ill. 2d 71, 77-79, 744 N.E. 2d 845, 848-849 (2001).

The requirements for collateral estoppel are present here. The issue of coercion of Plaintiff's confession versus its voluntariness was present in the certificate of innocence proceeding, and the same issue is present here in Count II. Second, there was a final judgment on the merits in the certificate of innocence proceeding. Third, Plaintiff was the petitioner in the certificate of innocence proceeding and is the party against whom collateral estoppel is asserted. Additionally, the court's finding of voluntariness was necessary for the judgment in the certificate of innocence proceeding because whether Plaintiff voluntarily caused or brought about his conviction is a requisite element to obtain a certificate of innocence. 735 ILCS 5/2-702(g). At the hearing, the court found Plaintiff gave a voluntary confession:

> I believe that the defendant did act in such a manner voluntarily to bring about his or her own conviction. I'm only focusing on that. It appears the defendant did give a statement—gave a statement to the police. It wasn't the effect—wasn't the product of any physical abuse or such verbal conduct or sleep deprivation or any other type of interrogation tactic that would bring about an involuntary confession… I can't find anything about the confession, despite [its] unreliability, that would make it the product of either illegal police conduct or some other activity that would cause the statement to be something other than a voluntary statement; and, therefore, I do find that the defendant brought about his conviction through his own conduct; and, therefore, I'm granting the State's motion to dismiss.

*People v. Amor*, 2020 IL App (2d) 190475 at¶12 (quoting the trial court).

Further, upon appeal, the Appellate Court noted that the trial court that denied Plaintiff's request for a certificate of innocence "considered the filings, statutory and case law, exhibits, and the decision rendered after [Amor's] retrial. The court acknowledged the 'unique' issues in this case, including the serving of divorce papers during the questioning and the later-determined unreliability of the confession." *Amor*, 2020 IL App (2d) 190475 at ¶24. Nevertheless, the voluntariness of that confession was affirmed on appeal.

15

Finally, the record is clear that the voluntariness of Plaintiff's confession was actually litigated. Plaintiff had the burden to prove that his confession was coerced, not voluntary, and he had every opportunity to do so in order to receive compensation in the Court of Claims and to use the certificate of innocence as evidence in this lawsuit. See 705 ILCS 505/8(c); *Patrick* v. *City of Chicago*, 974 F.3d 824, 832-833 (7th Cir. 2020).

Here, Plaintiff had ample opportunity and incentive to litigate the voluntariness of his confession during his certificate of innocence proceeding, the issue was decided against him and affirmed on appeal. Plaintiff is collaterally estopped from relitigating the coercion of his confession. Defendants are entitled to summary judgment on Count II.

## B. The Illinois Certificate of Innocence Statute Does Not Preclude Collateral Estoppel.

The statute, 735 ILCS 5/2-702(j), does state that the decision to grant or deny a certificate of innocence shall not have res judicata effect on any other proceedings. However, the statute specifically applies to the "decision," not the findings on issues of fact and law in reaching the ultimate decision. Further, it is specific to "res judicata" and not collateral estoppel. Res judicata (claim preclusion) and collateral estoppel (issue preclusion) are distinct doctrines under Illinois law. In *Nowak v. St. Rita High Sch.,* 197 Ill. 2d 381, 389-91, 757 N.E.2d 471, 477-478 (2001), the Supreme Court of Illinois distinguished between the two doctrines, defining res judicata as "claim preclusion," applying to "claims" that were or could have been previously litigated, and collateral estoppel as preventing re-litigation of specific material facts or questions that were previously litigated and decided. The certificate of innocence statute, 735 ILCS 5/2-702(j), only impacts the former. [1]

---

[1] The statute's silence on collateral estoppel has resulted in conflicting opinions about its effect. Compare *Fields v. Chicago*, No. 10-cv-1168 Dkt. 551 (N.D. Ill. Mar. 10, 2015) (Order on Motions

When courts construe a statute they presume the legislature knew the common law. *People v. Bruemmer*, 2021 Ill. App (4th) 190877 ¶ 34, 192 N.E.3d 823, 834. "It is well settled that when statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." *People v. Cole*, 2017 IL 120997 ¶ 30, 104 N.E.3d 325, 334. Thus, the Illinois legislature is presumed to have known the difference between res judicata and collateral estoppel described in *Nowak* when the certificate of innocence statute became effective in September 2008.

Similarly, if the legislature had intended section 702(j) to pertain to findings of fact or law, it could easily have said so, as it has in the drafting of other statutes. See e.g., 225 ILCS 2/160 Acupuncture Practice Act ("The report of findings of fact, conclusions of law, and recommendations of the Board may be the basis of the order of the Department … The finding is not admissible in evidence against the person in a criminal prosecution brought for the violation of this Act, but the hearing and findings are not a bar to a criminal prosecution brought for the violation of this Act."); 725 ILCS 5/110-6.3(c)(1)(A) concerning bail (repealed eff. Jan. 1, 2023) ("At the trial concerning the offense for which the hearing was conducted neither the finding of the court nor any transcript of other record of the hearing shall be admissible in the State's case in chief, but shall be admissible for impeachment, or as provided in Section 115-10.1 of this Code, or in a perjury proceeding."); 820 ILCS 405/1900(B) concerning unemployment insurance ("No finding, determination, decision, ruling or order (including any finding of fact, statement or conclusion made therein) issued pursuant to this Act shall be admissible or used in evidence in any

---

Concerning Certificate of Innocence Proceeding, rejecting collateral estoppel) (attached as Exhibit A) with *Wrice v. Burge*, 187 F. Supp. 3d 939, 951 (N.D. Ill. 2015) (assuming, without deciding, COI denial can result in issue preclusion).

action other than one arising out of this Act, nor shall it be binding or conclusive except as provided in this Act, nor shall it constitute res judicata").

Considering "*expressio unis est exclusio alterus*," meaning the expression of one thing is the implied exclusion of the other, the certificate of innocence statute's silence on the effect of the court's findings of fact and law means they are excluded from 735 ILCS 5/2-702(j). If the legislature intended collateral estoppel to be inapplicable in other proceedings it would have said it explicitly in the language of the certificate of innocence statute.

### C. Allegedly Misrepresenting the Strength of Evidence to Plaintiff does Not Constitute Coercion.

Plaintiff alleges that Defendants lied, telling him that he failed the polygraph examination, coercing him to make an involuntary confession. While there is no evidence that Mr. Masokas and Mr. Newey deliberately misrepresented to Mr. Amor the outcome of his polygraph, the Seventh Circuit has addressed this issue in *Johnson v. Pollard*, 559 F.3d 746 (7th Cir. 2009). In *Johnson*, the plaintiff claimed that the detective taunted him by indicating that he had failed the polygraph examination despite being unaware of the results of his polygraph. *Johnson*, 559 F.3d at 753. The court noted that an interrogating officer's misrepresentations are neither dispositive nor irrelevant to the question of whether a defendant's statement was voluntary but instead the extent of the misrepresentation must be evaluated. *Id*. at 754. It was found that the misrepresentation regarding the polygraph, without other elements indicating Johnson's will was overborne, was not sufficient to find a coerced confession. *Id*. Similar to *Johnson*, here there are no other elements overbearing or overwhelming Plaintiff's will. Plaintiff himself described his treatment at Reid & Associates as "you know, good, bad or indifferent, they're just—they have a job just like you do and I do." (SOF ¶ 33). No one raised their voice to him, and only touched him to administer the polygraph. (SOF

¶ 33). Further, the allegedly coerced confession did not occur at Reid & Associates, as Mr. Amor always maintained his innocence while at Reid & Associates. (SOF ¶ 45).

Further, "causation alone does not constitute coercion; if it did, all confessions following interrogations would be involuntary because 'it can almost always be said that interrogation caused the confession.'" *Holland v. McGinnis*, 963 F.2d 1044, 1051 (1992) quoting *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986), cert. denied, 479 U.S. 989 (1986). Thus the issue is not causation, but the degree of improper coercion. *Holland*, 963 F.2d at 1051. Here, there was none.

### D.  Plaintiff Cannot Establish a Substantive Due Process Violation.

Plaintiff's substantive due process claim also alleges acts of physical and mental coercion themselves. The record is completely devoid of any acts of physical and mental coercion by Defendants against Plaintiff. Amor was not threatened or touched other than for purposes of the polygraph while at Reid & Associates, and he acknowledged that he was free to leave at any time. (SOF ¶¶33, 35). A free-standing Fourteenth Amendment claim is permitted only when a defendant's conduct shocks the conscience, an extraordinarily high standard. *Chavez v. Martinez*, 538 U.S. 760, 774-75 (2003). "[T]he question is whether the conduct is 'too close to the rack and the screw.'" *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) quoting *Rochin v. California*, 342 U.S. 165, 172 (1952). The interrogation methods must be so brutal and so offensive to human dignity that they shock the conscience. *Chavez*, 538 U.S. at 774. The alleged behavior here was not so "close to the rack and screw" to render it conscience-shocking. Defendants' alleged conduct does not support a substantive due process claim.

19

## V. PLAINTIFF'S UNLAWFUL DETENTION (COUNT III), CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS (COUNT IV) AND FAILURE TO INTERVENE (COUNT V) CLAIMS ARE DERIVATIVE AND, THEREFORE, FAIL.

Counts III, IV, and V allege federal claims for unlawful detention, conspiracy to deprive constitutional rights, and failure to intervene, respectively. These claims are derivative of Plaintiff's fabrication and coerced confession claims in Counts I and II. If those claims fail, Counts III, IV and V fail as well. See, *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (failure to intervene); See also *Coleman*, 925 F.3d at 351.

## VI. AS THERE IS NO EVIDENCE OF MISCONDUCT, PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST FAIL.

Under Illinois law, a claim for intentional infliction of emotional distress requires proof of "extreme and outrageous" behavior. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 80 (2003). Without evidence that Defendants violated Plaintiff's constitutional rights, no evidence of extreme or outrageous conduct remains, and the Intentional Infliction of Emotional Distress claim must fail. *Cooney,* 746 F.Supp.2d at 977. In *Cooney*, similarly, the plaintiff alleged defendants conspired to deprive plaintiff of her due process rights and a state law claim for intentional infliction of emotional distress. *Id*. at 974. The court ruled that without any evidence of misconduct on defendants' part, it was easily concluded that plaintiff's intentional infliction of emotional distress claim, which was based on the same conduct underlying plaintiff's § 1983 claim, failed. *Id*. at p. 977. The court stated that the plaintiff had no proof of any conduct by defendants that was "extreme and outrageous." Here, Mr. Amor's intentional infliction of emotional distress claim fails for the same reasons. Mr. Amor's intentional infliction of emotional distress claim is based only on the same conduct underlying his § 1983 claim. As there is no misconduct to support his § 1983

claim, there is also no conduct considered "extreme and outrageous," and his intentional infliction of emotional distress claim must fail.

## VII. PLAINTIFF'S CONSPIRACY AND *RESPONDEAT SUPERIOR* CLAIMS ARE DERIVATIVE OF HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AND ALSO MUST FAIL.

Because Plaintiff's malicious prosecution claims abated with his death, the Court allowed Count VIII and IX of Plaintiff's Amended Complaint to continue only for the allegations related to intentional infliction of emotional distress. (Dkt. 124). These claims must fail for the same reason the intentional infliction of emotional distress claim fails, there is no evidence of underlying misconduct or extreme and outrageous behavior.

Under Illinois law, a civil conspiracy requires "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; [and] (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused the injury to the plaintiff." *Borsellino v. Goodman Sachs Group, Inc.,* 477 F.3d 502, 509 (7th Cir. 2007) citing *McClure v. Owens Corning Fiberglass Corp*., 188 Ill. 2d 102, 133, 720 N.E.2d 242 (1999). An agreement is a "necessary and important" element and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017). Conspiracy is not an independent cause of action but is derivative of an underlying tort. *Adcock v. Brakegate*, 164 Ill. 2d 54, 62 645 N.E.2d 888, 894 (1994); *Mauvais-Jarvis v. Wong*, 2013 IL App. (1st) 120070, 987 N.E.3d 864, 895. Plaintiff has not adduced evidence to support any elements of his conspiracy claim. There is no evidence of agreement and no evidence of the underlying intentional infliction of emotional distress. As such, Defendants are entitled to judgment on Count VIII.

As to *respondeat superior*, absent an actionable underlying claim against the individual defendants on the state law claims, Reid & Associates is not vicariously liable and is entitled to judgment on the *respondeat superior* claim (Count IX). See e.g., *Carey v. K-Way, Inc*., 312 Ill. App. 3d 666, 672, 728 N.E.2d 743 (1st Dist. 2000) (no liability for employer under theory of *respondeat superior* where no liability on part of employee).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants request this Court enter summary judgment in their favor and against Plaintiff.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ F. Michael Pasqualino*
     One of the attorneys for Defendants

Jonathan W. Goken, ARDC No. 6278837
F. Michael Pasqualino, ARDC No. 6311292
Alexandra W. Sternberg ARDC No. 6310249
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
(312) 345-1718/Fax: (312) 345-1778
Jonathan.Goken@lewisbrisbois.com
F.Pasqualino@lewisbribois.com
Alexandra.Sternberg@lewisbrisbois.com