# EXHIBIT 8

L. D. BEFORE Y N
TEST
EX: MFM
R - B - SA    NAPERVILLE P.D
BODY TYPE

M F
C W
SUBJECT William E. Amor    ADDRESS   No Current Residence

M F
C W
SUBJECT: William E. Amor

NERV.                COOP.
EVAS.                DIRECT.
ARGUM.               INTELL.
HOSTILE.

CMS
D W Sp
CHILD
AGE 39
DATE 10-3-85
CARD ④ OK
TIME 4:40 P.m / 5:20 (05)

REEX
DATE
CARD
EX
TIME

⑤ USED WASHROOM 2/3 X's + WAS OFFERED CIGS. + WATER

5:45 clears 6:15 out

1. DO THEY CALL YOU ___ Bill ___ (+)   Do Anything to.
2. ARE YOU OVER 35 YEARS OLD? (+)
R 6 3. ON Sunday Sept. 10 (85) DID U Start A FIRE IN YOUR APARTMENT (____) AT ?
3a.
3b.
4. ARE YOU IN CHICAGO RIGHT NOW? (+)
R 5. DID U help & plan w/ Anyone to Start that FIRE? (-)
5a.
5b.
6. Bs traffic violations + stealing do Anything else Against the Law? (-)  (POST- DENIES: Says
6a.    H talked About Insur.
6b.    Doesn't Recall)
7. DID YOU EVER GO TO SCHOOL? (+)
8.
8a. BEFORE U LEFT FOR the Annex, DID U KNOW your Apt.
8b. (ON 9-10-85) WAS going to BE DESTROYED By A FIRE? (-)
9.
9a.
9b. Do U KNOW who Set that FIRE IN Your Apt? (-)
10.
10a.
11. Bs AN ARSONIST EVER do Anything to intentionally hurt SOMEONE? (-)
11a.

POST 6:30
7:30 out
IN 7:45
OUT 8:30
ATN 8:45
OUT 9:15
N.P.O 9:30
10:00

**1. WORK  2. YOU  3. SUSP.  4. WHO NOT SUSP.  5. THINK STOLEN  6. WHO DO YOU THINK WOULD HAVE THE BEST OPPORTUNITY TO DO IT?  7. F. P.  8. BORROW  9. EVER HAPPEN BEFORE  10. THINK 11. APPROACH  12. HOW LD COME OUT ON YOU  13. T. S.  14. STEAL WORK  15. ADM.  16. WHAT SHOULD HAPPEN TO DOER.  17. HOW DO YOU FEEL ABOUT TAKING THIS TEST.  18. TELL ACT ON TEST.  19. HOW DO YOU THINK PERSON FEELS?  20. MEDICATION.  21. LOVED ONE FEELS.**

① — wkg. P.T. at Church > nawt. — 1-2 mrks

27) → um hum ... yes Sir        it's fuckable about how fire started — feel to say have Bee int. started + they feel I may have something to do with. that's why I'm here a clear it up —

② (no susper) (Arss x'd)

④ (Repeat Q) — no Sir

③ Previously but out of here — who had key's mike usls — who's ex-boyfriend spoke to her on phone + found out re med's — told her he was going to hurt me (6-95) — we've met — he was Bd mth.

④ T.N.A.? = her mother (Delay/____) I don't bel. my wife would kill

16) → (Fixing shoe — Delay) (looking away) — I don't know land — but def. life — + help (____)

29) → (Sigh / long Delay)  — I suppose if truly Remorseful + alot of provisions — so there wouldn't harm anybody again —

⑤ → it's a loaded Q. — .......

Sunday 9-10-95 => got up bet. 9-10 A.M. > watched football at house — lf 3 of 95. — > Tina + mom went to pick up pizza (back by 2:30) — few phone calls from friends — watched football till 6:45 P.M. I loaded up car w/ cooler + blanket + Tina & I went to Dells — a movie — left house about 6:20 P.M. — when I took cooler down I stayed down + Tina was down few minutes later — got home little bef. 11 P.M. — then we learn about it. =

How Start? I've been there this alot — fire started in past (____)

Get Along? Marriage; good — Tina ? back pretty severe —

L. D. BEFORE · Y  N

TEST

EX:

S - R - B - SA

BODY TYPE

M   F
C   W

SUBJECT

ADDRESS

NERV. _____ COOP. _____
EVAS. _____ DIRECT. _____
ARGUM. _____ INTELL. _____
HOSTILE. _____

M S
D W Sp
CHILD
AGE
DATE
CARD
TIME

REEX

DATE
CARD
EX
TIME

1. DO THEY CALL YOU _____

2. ARE YOU OVER _____ YEARS OLD?

3.

3a.

3b.

4. ARE YOU IN CHICAGO RIGHT NOW?

5.

5a.

5b.

6.

6a.

6b.

7. DID YOU EVER GO TO SCHOOL?

8.

8a.

8b.

9.

9a.

9b.

10.

10a.

11.

11a.

**1. WORK 2. YOU 3. SUSP. 4. WHO NOT SUSP. 5. THINK STOLEN 6. WHO DO YOU THINK WOULD HAVE THE BEST OPPORTUNITY TO DO IT? 7. F. P. 8. BORROW 9. EVER HAPPEN BEFORE 10. THINK 11. APPROACH 12. HOW LD COME OUT ON YOU 13. T. S. 14. STEAL WORK 15. ADM. 16. WHAT SHOULD HAPPEN TO DOER. 17. HOW DO YOU FEEL ABOUT TAKING THIS TEST. 18. TELL ACT ON TEST. 19. HOW DO YOU THINK PERSON FEELS? 20. MEDICATION. 21. LOVED ONE FEELS.**

TINA + MOM? — get along OK just not close too
bother + mother —

9-10 > 2½-3 drinks (tall glass) of vodka + 7up
no drugs

TINA + mom not drinking —

⑰ → I feel a little annoyed that same ??? could tell
I'd hurt someone I loved —

⑨ → No! (surprised) —

⑩ → ⊖ Known Tina + mom about 4 yrs. —

㉕ to gruesome for me —

⑭ → ⊖

㉑ here? we just found out today —

INSUR? — if I was talking I wasn't ??? really think
㊙ I don't even know about Insur on contents —
it's none of my B-S.

⑦ Long delay — I can't tell any reason why
I would go back up! —

⑫ Yeah — I'm telling u the truth (said 2)
I need to clean this up —

⑱ → ⊖ tense — nervous —

AGAINST LAW                    INTENT hurt —
  TRAFFIC                        ARGUMENT
  STEALING
                               ㉗ t/good
                                 sex theft

# JOHN E. REID AND ASSOCIATES
## POLYGRAPH CASE HISTORY

DATE FACTS TAKEN_____

MIRANDA WARNINGS Yes_____ No_____
TELEPHONE REPORT _____

| TEST DATE | TIME | CONTACT | TEL. | AFTER Y | N |
|---|---|---|---|---|---|

OFFENSE _____  REPORT

VICTIM _____ Col/Age _____   Nassau IIs ?.D.

DATE Sunny 9-10-9 TIME _____

PLACE _____  FEE: $_____

LOSS _____ Val. Min. _____  Max. _____

○ to pay $_____ at time of test.

INSURED _____  ○ to be billed $_____

INV.   MIKE CROSS          $_____ part payment. Bill $_____
       Bob

○ CONTRACT

○ NO FEE      ok

| CHIEF SUSPECTS | M/F | Col/Age/Tenure | REF: | | DUE |
|---|---|---|---|---|---|
| | | | Prior LD This Case (✓ only if yes) | | |
| 1. Gillian AnoR | | | | | NEED STAT'T? |
| 2. MARIANNE Miceli | | | | | FORMAL ☐ |
| 3. TINA daughter of Sp | | | | | WRITTEN ☐ |
| 4. | | | | | ORAL ☐ |
| 5. | | | | | NONE ☐ |
| 6. | | | | | |
| 7. | | | | | |

$100,000 LIFE insurance Policy
on $S_2$

$S_2$ Victim = C.O.D = Smoke inhalation

on 9-10-95 FIRE in $S_2$ Apt.
$S_2$ Calls FIRE dept. at 6:40 P.s
Says she can't exit Apt.
Because 2 Chairs blocking
Doors + Both BURNING ( 1 at
Patio — 1 AM middle of living
Room )

$S_2$ on phone w/ Girlfriend at
until 6:31

CONFRONT  Y  N          IF GUILTY: PROSECUTE ○   REST. ○   FIRE ○   OTHER ○

$\frac{S_2}{S}$ Mentally Retarded $S_3$ initially

Romantically involved w/ $S_2$

then $S_1$ becomes involved w/ $S_3$

$S_2$ + $S_3$ say left Apt. at

6:25 to 6:30 —

$S_3$ denies any knowledge of

Insur. policy —

Friends of $S_2$ + $S_3$ claim

that $S_2$ + $S_3$ spoke openly

about the policy in their

**WHO DISCOVERED LOSS (BODY)?**   presence

**WHO LAST HANDLED MONEY (SEE VICT.)?**

**INVESTIGATION TO DATE:**

Who's common to loss?   Aft. a number of Int's

Any Prior Interview/Interrog. of S.?   $S_1$ says he spilled

Undeveloped Leads?   vodka + may have left

**ATTITUDE TOWARD LD:**   A burning cigarette in

Refusals:   Ashtray that may have

Objections:   fallen out of Ashtray —

Resignations:

Personality Changes:

**PRIOR PROBLEMS:**

Shortages:

Suspected Before:

Work Attitude:   $S_1$ has history of scamming

Disgruntled:   Familes out of $

Temperment:   Just prior $S_1$ spent 6 mohs.

**P.O.T. Info.:**   in Lock up for forgery

Case: 1:20-cv-01444 Document #: 145-8 Filed: 02/09/24 Page 8 of 36 PageID #:1894

## POLYGRAPH ("LIE-DETECTOR") EXAMINATION

JOHN E. REID AND ASSOCIATES, INC.
250 So. Wacker Dr., Suite 1100
Chicago, IL 60606

EXAMINER: _MASoKAS_

    I hereby voluntarily consent to the taking of a Polygraph ("Lie-Detector")
Examination to be conducted by Licensed Examiners of John E. Reid and Associates.
I also consent to a disclosure of the results of such an examination,
and of relevant statements which may be made by me, to:_____
_____ _NAPERVILLE   PoliS   DEpt_

    In accordance with Illinois law I have a right to request a copy
of the results of this examination, and the Examiner will not inquire
into any of the following areas if this is a pre-employment or periodic
Polygraph Examination, unless the area is directly related to
employment:

    1) Religious beliefs or affiliations:
    2) Beliefs or opinions regarding racial matters;
    3) Political beliefs or affiliations;
    4) Beliefs, affiliations or lawful activities regarding
       unions or labor organizations; and
    5) Sexual preferences or activity.

Also, for the limited purpose of quality control, demonstration,
instruction and training by John E. Reid and Associates, Inc., I
consent to the listening to, observation of, or video recording
of any of my statements or conversations while in the interview
room. These recordings may be used at John E. Reid and Associates
training seminars.

Furthermore, I understand that I am free to leave this office
at any time.  _B.A._

    In view of the foregoing, I release John E. Reid and Associates and

_____ _NAPERVILLE  PoliS  DEpt_ _____ from any liability.

_16-3-95 4:20_     _Chicago_          _+William Cin_
Date Time              Place                    Signature

                                          _M. mm_
_I UNDERSTAND THAT I AM NoT_               Witness
_IN CusToDy.  B.A._

### (FOR USE IF SUBJECT IS A MINOR)

    I,_____, a parent (or guardian) of the above
named examinee, have read the foregoing and agree to its provisions.

_____   _____   _____
Date                    Place                          Signature

## MEDICAL DATA SHEET

1. In the last 24 hours have you taken any medication, drugs, (including marijuana) or alcohol?

   NO _____ YES _X_

   Name of drug or medication: _ACTiFED_____ When consumed? _1 pm_  _10-3_

   How much consumed? _1 TABlET_____ Reason for taking drug or

   medication? _CoLD / SiNuS PRoBlEmS_____

2. In the last 24 hours, how many hours of sleep have you had? _4_

3. Are you presently under a physician's care (including pregnancy)?

   NO _X_ YES _____ If yes, please explain _____

   _____

4. Have you been prescribed to take any medication by a doctor within the last 12 months? Name of medication: _____NO_____

   Reason: _____

5. Please check the appropriate box if you have had any of the following:

   | | | YES | NO | |
   |---|---|---|---|---|
   | a. | Heart problems | | NO _X_ | |
   | b. | High blood pressure | | NO _X_ | |
   | c. | Respiratory or lung problems | YES _X_ | | → SuRgERy - SPoTs on Lungs mid 80s no DR Late |
   | d. | Recent arm injury | | NO _X_ | |
   | e. | Recent surgery | | NO _x_ | |
   | f. | Other _SoRES REmovED FRom uPPER PARTs oF Lungs._ | | | |

• 6. Are you experiencing any physical discomfort at the present time? NO _____ YES _X_
   If yes, please explain _HEADACHE , CoLD SymPToms_____

7. Have you ever consulted a doctor about a nervous, psychological, or emotional problem? YES _____ NO _X_

   If yes, please explain _____

8. Identification: Drivers License # _____

   Social Security # _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_

_WilliAm AmoR_
**Print Name**

_10-3-95_
**Date**

# JOHN E. REID AND ASSOCIATES, INC. ESTABLISHED 1947

250 SOUTH WACKER DRIVE, SUITE 1100
CHICAGO, ILLINOIS 60606 • (312) 876-1600
1-800-255-5747 • FAX (312) 876-1743

October 20, 1995

Det. Michael J. Cross
Naperville Police Dept.
1350 Aurora Ave.
Naperville, IL 60540

On October 3, 1995, William E. Amor voluntarily came into our laboratory for a polygraph examination to investigate whether or not he was involved or had knowledge of who set a fire and caused the death of Marianne Miceli on September 10, 1995.

This office was advised that on September 10, 1995, Ms. Marianne Miceli called 911 at approximately 6:41 p.m. from her apartment in Naperville to report a fire. She had indicated to the 911 operator that she could not exit the apartment because there were two chairs on fire blocking both doorways. Ms. Miceli was later found dead in her bedroom, the cause of death was determined to be smoke inhalation.

Living with Ms. Miceli were her daughter Tina and Tina's husband, William Amor. During the course of the investigation by the fire and police departments, it was determined that Tina and William were in the apartment up until approximately 6:30 p.m. When they were questioned about the fire, they both stated that when they left the building there was no fire.

Also, it was discovered that Ms. Miceli had a life insurance policy; however, both Tina and William deny that they had any knowledge of such a policy. Through discussions with friends of the family, people had indicated to the investigating police officers that they had heard both Tina and William talking about this particular insurance policy.

Before the test the subject signed a form releasing Naperville Police Department of any liability which may result from the polygraph examination. The executed release forms are incorporated as part of our laboratory file in this case.

It should also be noted that prior to his polygraph examination this subject acknowledged that he was not in custody, under arrest or in any manner being detained. He also acknowledged that he was aware that he could terminate this examination and leave at any time.

Page Two
October 20, 1995

Prior to his polygraph examination he denied setting the fire in Marianne Miceli's apartment on September 10, 1995. He also denied conspiring with anyone to start that fire. This subject went on to deny any knowledge of who started that fire on September 10, 1995.

He did state that to the best of his knowledge he and his wife Tina left the apartment on September 10th at about 6:20 p.m.

He said that he was home at the apartment the entire day watching football. He stated that Tina and Marianne were also home the entire day except for a brief period of time when Tina and her mother left to pick up a pizza. This subject indicated that he did not find out about the fire or that Marianne had died until he and Tina returned at approximately 11 p.m. that night from the drive-in movie.

This subject also denied knowing about any life insurance policy that Marianne had. He did state that there may have been a time when he and his wife Tina briefly discussed Marianne's life insurance policy, however, if in fact this happened he was too drunk to remember the conversation.

There were significant emotional responses indicative of deception throughout this subject's polygraph records when asked the following questions:

(1)    On Sunday September 10, 1995, did you do anything to start a fire in your apartment in Naperville?    Answer:  No.

(2)    Did you help or plan with anyone to start that fire? Answer:  No.

(3)    On September 10, 1995, before you left for the movies, did you know your apartment was going to be destroyed by a fire?  Answer:  No.

(4)    Do you know who set that fire in your apartment? Answer:  No.

Page Three
October 20, 1995

It is the opinion of the examiner, based on these responses, that this subject is not telling the truth about his involvement in and knowledge of the circumstances surrounding the death of Marianne Miceli.

When advised of his polygraph test results this subject continued to deny starting the fire in his apartment on September 10, 1995.

Respectfully submitted,

Michael F. Masokas

# JOHN E. REID AND ASSOCIATES

ESTABLISHED 1947

**250 SOUTH WACKER DRIVE, SUITE 1100**
**CHICAGO, IL 60606  (312) 876-1600**
**1-800-255-5747  FAX (312) 876-1743**

**Invoice Number:** 1324

**Invoice Date:** 10/20/95

**Location:** In Office

**Customer ID:** 4993

**Customer Information:** Naperville Police Department
Det. Michael J. Cross
1350 Aurora Ave.

Naperville          IL          60540

| Service: | Date: | Subject: | Cost: |
|---|---|---|---|
| Professional Services | 10/3/95 | 4.5 hours | $450.00 |
| Polygraph | 10/3/95 | William E. Amor | |

**Total:** $450.00

95-42030

# Richard T. O'Brien & Associates, Inc.

15 SPINNING WHEEL ROAD
SUITE 14-B
HINSDALE, ILLINOIS 60521

CHICAGO (312) 236-4242
SUBURBAN (708) 325-4404
FAX (708) 325-4734

September 14, 1995

Det. Michael J. Cross
NAPERVILLE POLICE DEPT.
1350 Aurora Avenue
Naperville, IL  60540

RE:  MARIANNE MICELI-DEATH INVESTIGATION

On September 12, 1995, William E. Amor voluntarily submitted himself for a
polygraph examination to investigate whether or not he was involved in or
had knowledge of the fire that caused the death of Marianne Miceli on Sun-
day night, September 10, 1995.

Before the test, the subject signed a form releasing the Naperville Police
Department of any liability which may result from the polygraph examination.
The executed form release is incorporated as part of our laboratory file in
this case.

There were no significant emotional disturbances in this subject's polygraph
records on the irrelevant, control or the following relevant questions:

1. On Sunday night, September 10, 1995, did you do anything to start
   that fire in the apartment?

   ANSWER:  NO

2. Did you help or plan with anyone to start that fire?

   ANSWER:  NO

3. Did you start that fire before you left the apartment on Sunday
   night?

   ANSWER:  NO

4. To the best of your knowledge, do you know for sure if there was
   any life insurance (policy) on Marianne (Miceli)?

   ANSWER:  NO

5. Are you making up any parts of your story to the police about this
   investigation?

   ANSWER:  NO

95-42030

Det. Cross
Re : Polygraph test of
     WILLIAM E. AMOR
     on September 12, 1995
     Page 2

Due to the unemotional responses in this subject's polygraph records, this examiner is precluded from rendering an opinion as to the subject's status in this case at this time.

However, it should be noted that the subject consumed a quantity of alcohol just prior to the administration of this polygraph examination which may account for the unemotional nature of his polygraph records. It is recommended, if deemded necessary, that this subject be given a polygraph re-examination at a later date in order to further clarify the results of his test.

rto:ih

Richard T. O'Brien
Polygraph Examiner

95-42030

# Richard T. O'Brien & Associates, Inc.

13 SPINNING WHEEL ROAD
SUITE 14-B
HINSDALE, ILLINOIS 60521

CHICAGO (312) 236-4242
SUBURBAN (708) 325-4404
FAX (708) 325-4734

September 18, 1995

Det. Michael J. Cross
NAPERVILLE POLICE DEPT.
1350 Aurora Avenue
Naperville, IL 60540

Re: MARIANNE MICELI-DEATH INVESTIGATION

On September 12, 1995, Tina M. Miceli-Amor voluntarily submitted herself
for a polygraph examination to investigate whether or not she was involved
in or had knowledge of the fire in her apartment on September 10, 1995
causing her mother's death.

Before the test, the subject signed a form releasing the Naperville Police
Department of any liability which may result from the polygraph examination.
The executed form release is incorporated as part of our laboratory file in
this case.

During the course of the subject's polygraph pre-test interview, the subject
requested that the polygraph test be postponed due to the impending burial
of her mother later in the day. The subject stated that she would be will-
ing to continue the polygraph test after the burial at a date and time con-
vient to all parties.

On September 15, 1995, the subject voluntarily re-submitted herself for a
polygraph examination regarding the death investigation as noted above.
The subject again signed a form releasing the Naperville Police Depart-
ment of any liability which may result from the polygraph examination.

There were no significant emotional disturbances indicative of deception
in this subject's polygraph records on the following questions:

1. On Sunday night, September 10, 1995, did you start that fire
   causing your mother's death?

   ANSWER: NO

95-42030

Det. Cross
Re : Polygraph test of
    TINA M. MICELI-AMOR
    on September 15, 1995
    Page 2


2.  Did you intentionally start that fire Sunday night?

    ANSWER:  NO

3.  Did you help or plan with anyone in anyway to start that
    fire Sunday night?

    ANSWER:  NO

4.  Do you really know for sure who started that fire Sunday
    night?

    ANSWER:  NO

5.  Are you intentionally making up any parts of your story
    to the police about this investigation?

    ANSWER:  NO


Therefore, it is the opinion of the examiner, based on the subject's
polygraph records, that she is substantially telling the truth at this
time on the abovelisted questions.

It should be noted however, that the results of the subject's polygraph
test must be qualfied due to the subject's learning dysfunction and her
limited comprehension of the polygraph technique.

rto:ih

                                        Richard T. O'Brien
                                        Polygraph Examiner

Keith Chaval
DuPage States Atty
Called - has question
on polygraph done on
William Amor 10/3/95
There is a hearing going on.
708· 682· 6457
please call.

Green note
505
3 to 96
12:3
3 of Fl.

JOHN E. REID AND ASSOCIATES, INC
250 S. WACKER DRIVE
CHICAGO, IL 60606

## FAX COVER SHEET

DATE: _2 - 29 - 96_

TO: _Keith Chval_ AT FAX # _708- 682- 6887_

FROM: _Mike Masokas_ AT JOHN REID (FAX 312-876-1743)

_6_ NUMBER OF PAGES, INCLUDING THIS COVER SHEET

### *** CONFIDENTIALITY NOTICE ***

This message and documents accompanying this facsimile transmission are only for the use of the individual or entity to which it is addressed. This facsimile may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, you are hereby notified that any dissemination, copying, distribution, or the taking of any action on the contents of this information is strictly prohibited. If you have received this facsimile in error please contact John E. Reid and Associates immediately by telephone to arrange for the return or destruction of the documents received.

MESSAGE_____

_____

_____

_____

_____

_____

_____

IF NOT PROPERLY RECEIVED, CONTACT US AT 1-800-255-5747,
OR 312-876-1600



CHART NO. 83050/JR    (3092)

JOHN E. REID AND





JOHN E. REID AND ASSOCIATES, INC.    CHART NO. 83050/JR    (3092)





JOHN E. REID AND ASSOCIATES, INC.     CHART NO. 3050/JR     (3092)



JOHN E. REID AND ASSOCIATES, INC.     CHART NO. 83050/JR    (3092)



JOHN E. REID AND ASSOCIATES, INC.    CHART NO. 8:11



NO. 83050/JR    (3092)

JOHN L. REID AND ASSOCIATES. IN





JOHN E. REID AND ASSOCIATES, INC.     CHART NO. 83050/JR     (3092)



JOHN E. REID AND ASSOCIATES, INC.    CHART NO. 83050/JR    (3092)





JOHN E. REID AND ASSOCIATES, INC.    CHART NO. 8305



ID AND ASSOCIATES, INC.        CHART NO. 83050/JR      (3092)



JOHN E. REID AND ASSOCIATES, INC.     CHART NO. 83050/JR     (1092)



JOHN E. REID AND ASSOCIATES, INC.    CHART NO. 83050/JR    (3092)

